## BANFILL *v.* BYRD *et al.*

[84 South. 227. In Banc. No. 21036.]

1. SEARCHES AND SEIZURES. *Officer searching private premises on a void search warrant cannot defend on theory of consent unless freely given.*

   An officer undertaking to search the premises of a private person on a void search warrant cannot defend a damage suit on the theory that the defendant consented to the search, unless it appears that the consent was freely given, or that the party had full knowledge of her rights, and that such consent was not given because of the warrant or the official character of the officer. A citizen is not required to resist an officer to maintain a suit in such cases.

2. SEARCHES AND SEIZURES. *General bad character is admissible in mitigation of damages in a suit for unlawful search and seizure.*

   Evidence of general bad character is admissible in mitigation of damages in a suit for unlawful searches and seizures; but

special acts or specific acts are not admissible, especially where the acts are those of guests in a hotel and not brought to the knowledge of the hotel keeper.

3. INTOXICATING LIQUORS. *In action for unlawful search, evidence of conduct of guest not admissible against hotel keeper where not shown to have come to her knowledge.*

Specific acts of immoral conduct by guests or roomers in a hotel are not admissible in evidence against the hotel keeper in a suit unless she learns of them and acquiesces therein after such knowledge. She may presume her guests are moral, and does not have to spy on them to see that they do not do wrong acts.

4. NEW TRIAL. *Trial judge cannot set aside a verdict contrary to peremptory instruction and render judgment for nominal damages.*

A trial judge does not have power to set aside a verdict for a defendant and render judgment for nominal damages where the verdict returned is contrary to a peremptory instruction.

5. TRIAL. *Jury refusing to find a verdict as directed may be discharged.*

Where a jury contumaciously refuses to find a verdict for plaintiff when directed to do so by the court, counsel for plaintiff is under no duty to move the court to compel compliance by the jury; but the jury may be discharged.

Holden and Stevens, JJ., dissenting.

APPEAL from Circuit Court of Harrison County.
HON. CHARLES J. RUSHING, Judge.

Action by Mrs. Margaret Banfill against Calvin W. Byrd and others. Demurrers to declaration overruled and verdict for defendants, motion for a new trial overruled, and defendant's motion to correct the judgment so as to find for plaintiff in a nominal sum granted, and plaintiff appeals. Reversed and remanded.

*E. J. Bowers* and *W. H. Maybin,* for appellant.

It is contended by appellant that the search of her premises, by Byrd, Murphy and a detachment of sailors, under so called search warrant, was as illegal and oppressive, as if a search had been made under a writ of replevin, or without any process of any kind. Affidavit

for a search warrant was made before W. F. Goodwin, styled clerk of the police court in fact, the city jailor, and the search warrant issued by W. F. Goodwin, "clerk of the police court."

The only officer in the state of Mississippi authorized by law to issue a search warrant is a justice of the peace, Code, 1906, sec. 1541, and search warrants can be issued in cases of stolen property and for intoxicating liquors, had and kept in violation of law.

Sec. 23 of the constitution provides that: "The people shall be secure in their persons, houses and possessions from unreasonable seizures or search and no warrant shall be issued without probable cause, supported by oath or affirmation, especially designating the place to be searched and the persons or things to be seized." It is very clear from this that the search, for the property of appellant was an outrage upon and violation of her rights, for which she was entitled to substantial damages.

As to the objections to the testimony introduced, we submit that they were all well taken and should have been sustained by the court, especially under our statute with reference to the plea of general issue, Code, sec. 744. "This statute narrows the scope and effect of the general issue. Every defense not merely consisting of a denial of the allegations of the declaration must be specially pleaded, or notice thereof given under the general issue." *Tittle* v. *Bonner,* 53 Miss. 578.

In this cause defendant was permitted, over the objections of plaintiff, to offer all sorts of proof, not only of the general reputation of the house as to the sale of liquors and immorality, but as to specific incidents, and that, too, when it was conceded that the appellant had absolutely no knowledge or notice of these matters. In addition to this, the appellee was permitted to answer this question, "Did you believe you had a right to go in under that writ?" Testimony of C. W. Byrd. We submit, if the court please, that this was a manifest error because

of the fact that every man is presumed to know the law and Byrd was presumed to know that the writ was void. In addition to all this, hearsay testimony was introduced.

It will be contended by the appellee that all this testimony was introduced in mitigation of damages, but we submit if the court please, that that doesn't help the matter at all, especially in view of the fact that the court declined to give appellant an instruction to the effect that they constituted no defense to the suit.

The jury evidently thought that it constituted a defense to the suit because they returned a verdict for the defendant and we respectfully submit that the refusal to give that charge was manifest and grave error, which gravely prejudiced the acts of appellant.

We also insist that the act of the court below in overruling the motion of appellant for a new trial was erroneous because of the fact that it was rendered against the peremptory instruction of the court to the contrary. The action of the court in amending the motion after the jury had been dismissed is also assignment of error, because the court had no right to change the verdict of the jury from a verdict for the defendant to a judgment for one dollar in favor of the plaintiff.

The record teems with errors, for all of which we respectfully submit the cause should be reversed and remitted.

*McDonald & Marshall* and *John S. Heiss,* for appellees.

We submit that the judgment appealed from should be here affirmed for the further reason that the learned court below should have granted the peremptory instructions requested by both appellees.

Further we think it is elementary that appellant's consent to the search under the proof in this case bars any action for damages upon her part. *Volenti non fit injuria.* She is presumed to know the law as well as is the

appellee, Byrd. And her claim is simply that both of them thought the warrant was valid, and Byrd was mistaken. The peremptory instructions should have been given.

We submit that the judgment should be affirmed for the further reason that the appellant suffered no actual damages, either of a physical nature to her and her property or by way of humiliation, mental anxiety or distress of mind. The jury being properly charged to consider all of these elements of possible damage, held that she was not damaged. This precludes the question; the jury's verdict being manifestly correct upon the proof. Appellant has already a judgment for nominal damages.

No error, we respectfully submit, may be predicated upon the trial court's admission of testimony bearing upon the hotel's reputation. The demurrer of the appellee Maryland Casualty Company vainly endeavored to have appellant specify the elements of her alleged actual damage, alone recoverable against a surety. Then, on direct examination by her own counsel, the appellant herself injected into the case in chief that element of her claim under her declaration alone. Rebuttal proof upon the part of appellees was perfectly competent under the general issue. As to proof of specific acts of whiskey sales and lewdness in appellant's Hotel. The proof was forced out by appellant herself in her attacks upon the authenticity of appellee's testimony upon the reputation of her hotel. The proof was competent. too, we submit, as showing the justification of the hotel's reputation as having a basis of fact, and the real character of the hotel as a resort of vice, explaining the entire situation, and giving information to the jury, relevant, and necessary to an intelligent consideration of the cause. Any technical error in this was rendered harmless by the peremptory instruction granted for the appellant on the question of liability.

There could be no error in the trial court's action in overruling appellant's motion for a new trial, and entering judgment for nominal damages in favor of appellant. Appellant is clearly estopped from asserting this point by the actions of her counsel when the jury's verdict was returned, but beyond this, the jurys verdict was not a contempt, but a mere return that the jury could find no damages at all sustained by appellant. The fixing of nominal damages was not necessarily a jury function, it being merely technical and not depending upon testimony; and the sound and wise principle obtaining that a new trial will never be awarded to permit the recovery of nominal damages, the court very properly entered a judgment for nominal damages in the amount of one dollar in favor of appellant. In this, we submit, there could be no error. 17 Corpus. Juris. 725 (Damages): "Where plaintiff establishes a wrong and actual loss therefrom, he is entitled to nominal damages at least, although the actual damages are not susceptible of being exactly ascertained, or are so small that they cannot readily be estimated. In such cases if plaintiff has sustained some damages and the jury being unable to ascertain the amount finds a verdict for the defendant, the court will permit plaintiff to enter a verdict for nominal damages." 29 Cyc., 837-8

"Amount of recovery. A new trial will not be granted on the weight of the evidence to enable a plaintiff to recover merely nominal damages, except where some question of permanent property right is involved."

Where the disregard of the instructions is purely technical, verdict will not be disturbed, 28 Cyc., 1892.

We respectfully submit that there was no error committed to appellant's prejudice in the trial of this cause below; that the result upon the whole record, is manifestly correct; and that, the judgment appealed from should be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant sued the appellees for damages for an unlawful search of her hotel. The appellee Byrd was chief of police of Gulport, and the Maryland Casualty Company was surety on his official bond. On the 31st day of December Byrd procured a search warrant from the police court clerk, authorizing him to search the hotel known as the Union Hotel in Gulfport, Miss., and, accompanied by a policeman and a body of marines, proceeded to search the Union Hotel for intoxicating liquors. They failed to find the intoxicating liquors, and so returned on the warrant. Thereafter this suit was brought and the general issue pleaded by the defendants, after having first demurred to the declaration and having such demurrers overruled by the court.

On the trial the plaintiff testified that the officer came to the hotel accompanied by a policeman and several marines, and handed her a copy of a search warrant, saying, "Here is a warrant to search this house," and she said, "Search it." She was asked on her examination as a witness, "Was there any particular room you objected to their searching?" and answered:

"No, sir; they did not complete the search. I was willing for them to go to every part. Q. Didn't you have a young man that remained there permanently, a Greek? A. Yes, sir. Q. Did they search his room? A. Yes, sir. He is not there at present. He is recuperating at St. Charles, La. Q. Did you object to them going to his room? A. I asked them to come out of that room, but they paid no attention and they ransacked the closet and tore up his suit clothes and scattered everything all over the floor."

She was asked on direct examination: "Were you humiliated by the search? A. Very naturally I was; that is why I am here to-day."

She was then asked: "Did it hurt the reputation of your hotel?  A. It certainly didn't help it any; naturally anything like that affects a public place."

She further testified that the reason she told them to go ahead and search the hotel was that she thought they had the legal right to do. so.

The defendants offered evidence of the general bad reputation of the hotel with reference to intoxicating liquors, and also that it was used and known as an assignation house, and introduced many particular cases of liquor drinking, and some particular sales of liquors, and particular cases of prostitution, all over the objection of the plaintiff.  The particular instances were not acts on the part of Mrs. Banfill, nor do they prove her personal knowledge of any of these acts.  It appears that a young man stopped at the hotel on December 26, 1918, and took a room there, and that during the night his watch and money disappeared, and some of the witnesses for the defendants admitted that they were convicted of stealing this money.  This guest testified that when he went to inquire for a room he registered, and that he was shown to his room by a young white woman, and after being assigned a room he was moved to another room, and that the room last assigned him could not be locked or fastened.  He further testified that this white girl inquired of him if he desired a woman to occupy the room with him. There were numerous instances of like conduct introduced in evidence over the objection of the plaintiff.  It appeared that this woman occupied a room in the hotel, and that she worked for a Greek restaurant keeper who had an eating house on the first floor of the hotel.  It was shown that this woman procured whiskey for men, but it is not shown that plaintiff had any knowledge of her act in this respect.  There was also another white woman, who seems to have been a woman of bad repute, who worked or stayed at this hotel.  This testimony was all admitted over the objection of plaintiff and exception taken.

The court instructed the jury peremptorily to find for the plaintiff on liability, giving, among other instructions, the following:

"The court instructs the jury that the search warrant, under which the search of the Union Hotel was made, was unlawful and void, and all the acts done under and by virtue of said search warrant were illegal and without any authority of the law, and the jury should find for the plaintiff in such sum as the jury may believe from the evidence that plaintiff has sustained."

The court also gave an instruction for the plaintiff that: "In assessing plaintiff's damages the jury may take into consideration any mental pain or humiliation suffered by plaintiff by reason of the unlawful search made." And further the court instructed the jury "to find for the plaintiff and assess her damages in such sum as, according to the evidence and circumstances in evidence in this cause, they believe she is entitled to receive."

The plaintiff requested and the court refused the following instruction: "The court instructs the jury for the plaintiff that the evidence in reference to lewd women or prostitution in and about the Union Hotel does not constitute any defense to this suit, even though the jury may believe that such evidence was true."

The jury returned a verdict for the defendants in spite of the peremptory in struction to find for the plaintiff. When the jury returned this verdict, the court addressed counsel for the plaintiff and inquired of him whether he desired the jury to return and reform the verdict, to which counsel replied, "No, the verdict is in form and responsive to the issue." Thereupon the court ordered the clerk to receive the verdict and discharge the jury, and, while the jury was leaving the courtroom, defendants' counsel moved the court to have the jury again retire and find a verdict in accordance with the instruction of the court, which motion the court overruled. Thereafter the plaintiff moved the court to set aside the verdict of the jury and grant a new trial because the

verdict is contrary to the peremptory instruction given by the court to find for the plaintiff, and because the court erred in overruling the plaintiff's objection to the evidence offered by the defendants, and because the court erred in modifying and refusing instructions asked by the plaintiff.   Thereupon the defendants filed a motion moving the court that the judgment rendered be corrected and amended so as to find for the plaintiff, and assess nominal damage in the sum of one dollar.   The court overruled plaintiff's motion for a new trial and sustained the defendants' motion to correct the judgment so as to find for the plaintiff in the sum of one dollar and costs.   From this judgment the plaintiff appeals here.

It is insisted by the appellees that the appellant cannot complain because, in the first place, it is insisted that the appellant consented to the search, and, inasmuch as the search warrant was void on its face, the clerk of the police court having no authority to issue it, the plaintiff must know this, and that she consented to the search and cannot maintain an action because of such consent.   The plaintiff testifies in the first place that she requested them not to search one of the rooms, and in spite of such request they did search the room of one of her guests, and certainly she did not consent to this.   In the next place, the officer of the law, armed with what purported to be a search warrant, appeared with a body of men and demanded the right to search the premises, which she thought they had a right to do. In order to establish plaintiff's consent to the search, it must appear that she gave her consent freely or with full knowledge of her rights.

An officer undertaking to search the premises of a private citizen, armed with a warrant issued by an official of the city, cannot defend on the ground of consent to such search unless it appears that the consent was freely given, and was not given because of his official authority, or under color of process issued by an officer claiming to have authority.   A citizen is not required as a condition

of maintaining an action against unlawful searches and seizures to resist the officer.

In the next place, it is insisted that the judgment of the court below was correct for the reason that it was manifest from the jury's verdict that they found no damage; and also because counsel failed, when called upon, to object to the receipt of the verdict, or to move that the jury be returned to bring in a proper verdict. The jury having been instructed peremptorily to find for the plaintiff, and having refused so to do, it is fair to assume that the jury acted on the theory that there was no liability rather than that there was no damage, and we do not think that a party is bound to move the jury to retire and reconsider its verdict where the jury has contumaciously refused to follow the instruction of the court.

Again, we think, whatever might have been the right of the court or of the defendants to have had the jury retire and reconsider its verdict before it was dispersed, that the court had no right to set aside the verdict rendered by the jury and to enter a verdict for the jury which the jury never rendered or considered, so far as the record shows. Again, we could not hold that the action of the court was harmless because the jury was permitted to consider incompetent evidence of such nature as manifestly prejudiced it against the right of the plaintiff. While the reputation of a plaintiff for bad character generally, or a general reputation of a hotel as being a place of evil resort, may be introduced in mitigation of damages in a case like this, it is not competent to show specific acts of evil conduct in mitigation of damages where such acts are committed by third persons, and where the knowledge of the plaintiff of such bad conduct and acquiescence therein is not shown.

The rule is stated in *Wood* v. *Custer*, 86 Kan. 387, 121 Pac. 355, 38 L. R. A. (N. S.) 1176, and the cases collected in case note to the L. R. A. report of this case.

In the first headnote in the L. R. A. report the rule is stated as follows:

"In an action for slander, it is competent for the defendant to show in mitigation of damages that, at the time of the defamation complained of, the plaintiff's general reputation was bad with respect to the matters involved in the charge made against him."

There is considerable conflict in the authorities as to whether the bad reputation must be confined to the particular reputation involved in the issue being tried. In the case note to the L. R. A. report of the case above cited it is said:

"Though there is some conflict of opinion, is is generally settled law in this country that proof of plaintiff's general bad character or reputation is competent in libel and slander, in mitigation of damages; and the theory upon which such evidence is held competent is that a man with a bad character or reputation has very little reputation to lose from a charge, and is therefore entitled to but little compensation; and so such evidence has been held competent in the following cases" —citing a large number of cases.

We think it was competent for the court to admit evidence of general bad reputation of the hotel in mitigation of damages, but that proof of specific acts not brought to the knowledge of the plaintiff is incompetent. It is doubtful as to whether specific acts of separate persons would be competent at all. Before such acts could be used in mitigation of damages, they should not only be brought to the knowledge of the keeper of the hotel, but after such knowledge by her it should be shown that they were acquiesced in and repeated from time to time. The authorities upon this subject are well collated in the case note to 38 L. R. A. (N. S.) 1176 et seq., and the great weight of the authorities is to the effect that specific acts of bad character are not admissible to establish bad reputation.

It must be remembered that this suit is not a prosecution for the keeping of a disorderly house, nor is it a proceeding to abate a nuisance. It would be utterly impossible for the keeper of a hotel to know all of the specific acts of immoral conduct that might take place in the rooms of the guests. The law presumes every person to be of good character until the contrary is established, and we think certainly the keeper of a hotel may be allowed to indulge the same presumption until knowledge of specific acts of misconduct shall be brought to their attention. It frequently happens that knowledge of misconduct comes tardily and sometimes last to the person most seriously affected by it, and it is possible for numerous acts of misconduct on the part of the guests in a hotel to take place without the keeper of the hotel having knowledge of it. It would be going too far to hold that the keeper of a hotel must spy upon the guests and form a habit of eavesdropping, or to "stop, look and listen" at the keyhole, to determine what might be going on in the room of a guest. This is especially true when the several acts of alleged evil conduct are committed by different persons. We think this illegal evidence was largely responsible for the refusal of the jury to follow the instruction of the court.

In addition to the authorities already cited above on the question of proving reputation by specific acts, we desire to call attention to the case of *Sayre* v. *Sayre,* 25 N. J. Law, 235, where the earlier authorities are reviewed upon this subject. Also, see *Hallowell* v. *Guntle,* 82 Ind. 554; *Wuensch* v. *Morning Journal Ass'n,* 4 App. Div. 110, 38 N. Y. Supp. 605; *McQuiggan* v. *Ladd,* 79 Vt. 90, 64 Atl. 503, 14 L. R. A. (N. S.) 689; *State* v. *Roderick,* 77 Ohio St. 301, 82 N. E. 1082, 14 L. R. A. (N. S.) 764 et seq.

It is insisted in the argument by the appellant that the evidence of bad reputation was not admissible because it was not pleaded or set up in the notice under the

general issue. We think it was admissible under the general issue in mitigation of damages under the authority of *Y. & M. V. Railroad* v. *Sultan,* 106 Miss. 373, 63 So. 672, 49 L. R. A. (N. S.) 760; also, *Grayson* v. *Brooks,* 64 Miss. 410, 1 So. 482.

The case will therefore be reversed and remanded for a new trial.

*Reversed and remanded.*

HOLDEN and STEVENS, JJ., dissent.