. NELSON v. STATE.*

(In Banc. Dec. 15, 1924.)

[102 So. 166. No. 24344.]

1. CRIMINAL LAW. *Affidavit and search warrant on which prosecutions for unlawful manufacture or sale based must be offered or loss or destruction shown.*

In prosecution for violating laws against the manufacture or sale of intoxicating liquors where the prosecution is founded upon an affidavit and search warrant, and where the testimony so obtained is objected to, the affidavit and search warrant must be produced and offered in evidence or their loss or destruction shown.

2. CRIMINAL LAW. *Evidence obtained by federal prohibition agents under search warrant issued by justice of peace inadmissible unless affidavit and warrant valid.*

Where federal prohibition officers procure a search warrant from a justice of the peace of the state and cause it to be delivered to them, and serve it upon a person whose place they desire to search, and through it obtain entrance to his premises and make a search and return the warrant to the justice of the peace, they are acting under state authority, and unless the affidavit and search warrant are valid the evidence obtained thereby is inadmissible in evidence.

SYKES, J., dissenting.

*Headnotes 1. Criminal Law, 16 C. J., section 1110; 2. Criminal Law, 16 C. J., section 1110.

APPEAL from circuit court of Smith county.

HON. W. L. CRANFORD, Judge.

Tom Nelson was convicted of the unlawful manufacture of intoxicating liquors, and he appeals. Reversed and remanded.

*H. B. Leach,* for appellant.

The question to which my argument shall be confined goes entirely to the validity of the search warrant and service upon which the evidence used against appellant was obtained. First, we lay down the flat proposition that the two officers above named, were not lawful officers of Smith county, Mississippi. Proceeding on that theory, they therefore had no legal right to execute the search warrant by which the evidence against appellant was obtained, the same being thus obtained illegally and therefore inadmissible to be used against him in the trial court. Neither had been deputized by any lawful officer clothed with the power to deputize them, in fact so far as the record shows they did not then nor do they now, claim to have acted in any capacity other than as officers of the Federal Government. Armed with the commission of the Federal Government and the Federal Government alone, they

took a search warrant directed to the sheriff or other lawful officer of Smith county, obtained from a justice of the peace in said county and made returnable to him, and without the said mentioned sheriff of said county or any other officer thereof, they went to the premises of appellant in Smith county and executed this search warrant, obtaining the evidence upon which he was convicted.

It is our contention that this being true, there was no service at all, any more than there would have been had a lawful officer of Smith county sued out a search warrant for appellant's premises and before reaching them lost his search warrant which was found by a private citizen of the county, who took the warrant and served it on the appellant.

*Tullos & Martin,* for appellant also.

Can prohibition agents execute process issued by a justice of the peace of a county where the search is to be made, and where the alleged crime was committed, the agents being citizens of another county? Certainly not when the only authority they had was given them by virtue of the writ itself, and the writ of search warrant when issued as provided by law is always directed to some constable, sheriff or deputy of the county, or to some lawful officer of the county where the search is to be made and the crime committed. Section 1332, Hemingway's Code; Sections 2230, 2231, Hemingway's Code; *Tucker* v. *State,* 128 Miss. 211, 90 So. 845; 24 A. L. R. 1377; *Falkner* v. *State,* 98 So. 691; *Loeb* v. *State,* 98 So. 449.

We contend that the trial court erred in admitting the testimony of the state's witnesses against the defendant with reference to the affidavit for search warrant and the search warrant, and the testimony of all about the still over the objection of appellant without producing the

affidavit and warrant or properly accounting for its loss. *Wells* v. *State,* 100 So. 674; *Cuevas* v. *City of Gulfport, Miss.,* 99 So. 503.

*E. C. Sharp.* Assistant Attorney-General, for the state.

Appellant relies upon the case of *Tucker* v. *State,* 128 Miss. 211, and cases following the decision in the Tucker case. Also, upon the case of *Cuevas* v. *City of Gulfport,* 99 So. 503. Neither one of the above cases is applicable to the facts in the present case. In the Tucker case, *supra,* there was no search warrant at all, and in the Cuevas case neither the affidavit nor search warrant was produced, or their presence accounted for or loss proven. We do not think that the destruction or loss of the affidavit and search warrant was sufficiently proven in the present case and the point raised by appellant would have been well taken but for the fact that appellant voluntarily took the stand and testified to the very things testified to by the prohibition officers. We think that this case is controlled by the rule laid down in the case of *Blowe* v. *State,* 130 Miss. 112; *Tennison* v. *State,* 99 So. 476.

ETHRIDGE, J., delivered the opinion of the court.

The appellant was indicted, tried, and convicted of the unlawful manufacture of intoxicating liquors. This prosecution grew out of a search warrant and the search made under it. The search warrant was issued by a justice of the peace of Smith county and was served by the federal prohibition enforcement officers; but the search warrant and affidavit were not introduced in evidence, and their contents are not before the court.

One of these prohibition officers was asked:

"Q. What did you do there? A. We searched his premises there; it had been reported there was a still there.

"Q. Did you have any authority to search it? A. Yes, sir; we had a search warrant.

"Q. State what was said by you to him when you went to search his premises. A. We drove up in front of his house.

"Q. 'We,' who do you mean? A. Mr. Buchanan and myself. He was fixing a tongue in a moving machine. We introduced ourselves and give him a copy of the search warrant, and he said, 'All right,' to go ahead and search.

"Q. State whether or not you did search. A. We did.

"Q. What did you find? A. A complete copper still, boiler, worm, that was all in the cooler barrel or tub, and a half gallon of whiskey..

"Q. Where was the whiskey? A. In the smoke-house directly behind the house."

He further testified that he obtained a warrant from the justice of the peace; that he had three copies of the search warrant; that he delivered one to the defendant, returned one to the justice of the peace, and sent the other to Jackson for our files. All this testimony was objected to and the objection overruled.

The justice of the peace who issued the search warrant was not produced, nor was any copy of the warrant or affidavit introduced in evidence.

The state ' undertook to prove by the clerk of the circuit court that the warrant was not in his office, and he testified it was not in his office; that he had never seen it. There was no proof whatever that it had ever been sent up by the justice of the peace, nor were the contents of the affidavit and warrant proven.

There was a motion for a peremptory instruction which was overruled.

The defendant testified on his own behalf and said that the officers drove up and stopped and came up to where he was and introduced themselves as McClelland

and Buchanan, and asked if Tom Nelson lived there, and appellant replied:

"That is what they call me. Q. Then what happened? A. Well, he says, 'I have a search warrant for you,' and pulled out a paper out of his pocket and handed it to me, and I could not see to read it, and I just looked at it, and handed it back to him. I says, 'If you got a legal search warrant for my place, and you are going to search my place, I can't prohibit it, I reckon.' Q. Did they search your place? A. They did. Q. What became of you? A. They carried me right along with them. Q. Where did they carry you? A. Right through my house to my smokehouse."

And he testified further that they found a still in his smokehouse, and he did not know how it came there; that he had not been in it for some time; and that the still looked new and bright and did not appear to have been run. He denied that they found whiskey.

The state reintroduced Mr. Buchanan, who testified to a statement made by the appellant on his way to court, in which he stated that they knew they had him about making the whiskey and asked them how light they would be on him. Appellant denied this statement.

The appellant was convicted and sentenced to the penitentiary, and prosecutes this appeal.

A number of questions were raised on appeal, one of which is that a search warrant was issued by the justice of the peace of Smith county where the search was made to federal prohibition officers who were not residents and citizens of the county, and who were incapable of exercising the rights of search under such search warrants, and also that the warrant from the state could not be issued and served by federal prohibition officers.

Section 2088, Hemingway's Code, chapter 115, Laws of 1908, provides for the issuance of search warrants and provides that it shall be directed to the sheriff or any constable of the county if in a country district, or,

if in a municipality, to the sheriff, or any constable or marshal, or policeman therein.

Section 2231, Hemingway's Code, section 2732, Code of 1906, provides that in cases of emergency, and where a constable or sheriff or deputy sheriff cannot be had in time, the justice of the peace may appoint some reputable person to execute any process.

Section 266 of the state Constitution provides:

"No person holding or exercising the rights of powers of any office of honor or profit, either in his own right or as a deputy, or while otherwise acting for or in the name or by the authority of another, under any foreign government, or under the government of the United States, shall hold or exercise in any way the rights and powers of any office of honor or profit under the laws or authority of this state, except notaries, commissioners of deeds, and United States commissioners."

Section 2811, Hemingway's Code, section 3473, Code of 1906, provides:

"The official acts of any person in possession of a public office, and exercising the functions thereof, shall be valid and binding as official acts, in regard to all persons interested or affected thereby, whether such person be lawfully entitled to hold the office or not, and whether such person be lawfully qualified or not," etc.

We cannot decide in the absence of the affidavit and search warrant whether the justice of the peace undertook to issue the writ under the emergency section above quoted, and we do not think we should pass upon the interesting questions raised with reference to the powers conferred on the prohibition officers by the search warrant in the absence of all facts bearing thereon.

We do not find it necessary now to pass upon the question as to whether the federal prohibition officers who are by law the assistants of the Commissioner of the Internal Revenue, and whose acts are his acts under the decision of the federal supreme court, may be

deputized by state officers to serve search warrants. And we will reserve that question until it is properly presented.

The case must be reversed on other grounds; that is to say, for the failure to introduce the affidavit and warrant by which access to the premises of the appellant was secured.

In *Cuevas* v. *City of Gulfport,* 99 So. 503, we held that in a prosecution for violating the laws against possession of intoxicating liquors, evidence obtained by a search warrant cannot be admitted over the objection of the defendant until the affidavit for a search warrant and the search warrant are produced in court, or their loss or destruction shown.

It has been said that the evidence obtained by the search was legal because the prohibition agents were federal officers, and that the prohibition of section 23 of the state Constitution on searches and seizures was only applicable to officers acting under the authority of the state government and had no application to the federal government.

We think under the facts in this case the prohibition officers were acting under color of state authority. They procured a search warrant to be issued and delivered to them by a competent state officer, and this warrant commanded the search to be made, and it cannot be said that it was not made under the authority of the state government. The warrant, if legally issued, made it proper for the defendant to yield to its command, regardless of whether the person undertaking to serve it was a competent person to be appointed for that purpose. Th citizen is not required to resist a person acting under a warrant issued by the state, but he may yield to the warrant and test its legality in a subsequent proceeding. *Banfill* v. *Byrd,* 122 Miss. 288, 84 So. 227.

*Reversed and remanded.*

SYKES, J., dissents.