JOE GRIFFIN v. THE STATE.

No. 15373. Delivered March 22, 1933.
Reported in 58 S. W. (2d) 528.

The opinion states the case.

*Jas. T. Casey,* of Longview, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The unlawful possession of intoxicating liquor for the purpose of sale is the offense; penalty assessed at confinement in the penitentiary for one year.

The filling station of the appellant was searched by four

officers. They possessed a search warrant, and made the search on the faith of the warrant. However, it was lacking in the fundamental necessities of a document of that kind to a degree that both court and counsel declare in the record that the search warrant was utterly void, and it is specifically stated that it was not relied upon for any purpose.

After a two hours' search without any result, the officers found what was described by Gonzaullas, as follows:

"I found a secret built-in trap in the wall, or in the wall structure, in the corner of a door. It was a 4 x 4 piece of lumber, running from the ceiling to the floor. I moved this piece and behind that was a pipe, which had a cap on it. * * * I guess about 1½ or 2 inches in diameter. It had a cap on it, and I unscrewed that cap and smelled the odor of whisky. This pipe was about three feet from the ground and run into the ground. * * *

"I turned to the defendant, Joe Griffin, and asked him what this was, and he did not have anything to say. I called the other officers in and told them, 'It looks like I have found the crop,' the term I used, meaning a trap, 'but I don't know how to get in to it.' * * * So I took my coat off, and asked the defendant, Joe Griffin, how to get into it. I don't believe he answered me at that time, and I said, 'I will have to dig it up I guess, or tear the building down to find out how to get into the outfit.' He said, 'Never mind doing that. I will show you how it works. You will find it anyway.' * * *

"He went over to the opposite side of the room, and another 4 x 4 was there. There were several of them, of course, but this other 4 x 4 was in a corner of a door also. He pulled this open, and in this place, there was another copper tubing run up, and he reached down and picked up a hose off of the floor, an air hose that you put air in tires with, and attached it to it, and forced the air into this pipe, which went into a tank, and got pressure up, and he went over then and got a bottle which was setting near, * * * and put it underneath this pipe and filled it up. I asked him how much there was in there, and he said, 'I think about 25 or 30 gallons.' "

The position taken by the appellant's counsel is that the presence of the whisky was discovered through the search, which was made under a void search warrant, and that the evidence obtained by the search was not admissible against the appellant, but was received in opposition to the law as declared in article 727a, C. C. P., which reads as follows: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of

Texas, or of the Constitution of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." (Vernon's Ann. Tex. C. C. P., vol. 2, 1932 Supp., page 115.)

The appellant did not testify, and introduced no testimony save that of his wife, to which reference will be made hereafter. On the trial, the facts were developed out of the hearing of the jury, and, with all of them before him, the court held the evidence sufficient to go to the jury, and in effect held that the testimony of the officers, as above stated, admissible in evidence. From the officers' testimony, it is manifest that they found whisky from their own efforts; that, after finding the whisky, they practically coerced the appellant by threatening to tear down his house to show them how they could reach the whisky.

In the case of McLaughlin v. State, 4 S. W. (2d) 54, this court said: "Having taken the witness stand himself and admitted having in his house practically everything of a criminative character, the officers claimed to have found, appellant is in no position to ask for a reversal of the judgment."

In Frey's case, 3 S. W. (2d) 459, it was said: "Having testified to the same facts as stated by the officers relative to the quantity of whisky he possessed, appellant cannot now claim to have been injured by the testimony of the officers, even if such testimony was improperly admitted."

See, also, Bevers v. State, 9 S. W. (2d) 1040; Pence v. State, 9 S. W. (2d) 348; Sherow v. State, 9 S. W. (2d) 353, and others.

As stated in each of the cases mentioned, the appellant having either taken the stand and given testimony himself or by putting others upon the stand and given testimony as to the result of the search substantially as that which was given by the officers, the right to a reversal because of the testimony which the officers obtained in an illegal search has been refused.

In the present instance, the appellant gave no testimony himself and did not take the stand. Apparently his case is upon the same principle as that applied in the case of Haynes v. State, 9 S. W. (2d) 1043, in which the following is found:

"The officers had seen appellant take the carton from his car and place it in the ice box, but did not know what was in the carton; they later heard him tell 'Boots' he had brought five gallons of whisky and put it in the ice box. But, as we understand the evidence, they had searched the ice box and discovered the whisky before hearing such admission from ap-

pellant. If this admission had been heard by the officers before they made the search, such admission in connection with what they had seen might have authorized an arrest and search under article 212, C. C. P. * * *

"The admission from appellant came to the officers' knowledge subsequent to a search of the ice box without a warrant authorizing it; such subsequent admission would in no sense legalize a search already illegally conducted, nor render admissible evidence obtained thereby."

In the instant case, from the moment the officers arrived with a warrant to search the appellant's place, he was under their dominion. Neither he nor the officers knew that the warrant was void, and the acts of each should be interpreted as though the warrant was valid: that is to say, the warrant justified the effort of the officers to enforce it, and required acquiescence by the appellant. So interpreted, the conduct of the appellant cannot be regarded as a waiver of his rights but as obedience to the process of the courts which the officers were executing. No consent to an illegal search can be inferred from the conduct of the appellant. He was silent until the officers made the threat to destroy his property in order to get possession of the liquor which they had located. The threat amounted to coercion. Precedents are collated in Cornelius on Search & Seizure (2d Ed.), pp. 74, 76, notes, including Jordan v. Commonwealth, 199 Ky., 331, 250 S. W., 1004; Hays v. State (Okla.), 261 Pac., 232. See, also, Smith v. State, 133 Miss., 730, 98 So., 344; Meno v. State, 197 Ind., 16, 164 N. E., 93; Banfield v. Byrd, 122 Miss., 288, 84 So., 227; Amos v. United States, 255 U. S., 313, 65 L. Ed., 654; United States v. Slusser, 270 Fed., 818; Salata v. United States, 286 Fed., 125; State v. Peterson, 27 Wyo., 185, 13 A. L. R., 1284; Jackson v. State, 153 Tenn., 431, 284 S. W., 356; Matlock v. State, 155 Tenn., 624, 299 S. W., 796; Connor v. State, 167 N. E., 545.

The testimony of the appellant's wife, in its entirety, is as follows: "I remember the occasion when the officers came out and searched that place and found some liquor. We had moved back that day. We moved about noon. The raid was in the afternoon, sometime of the same day we moved back out there."

The wife's testimony particularizes no place of search. It is only inferentially that it applies to the transaction which is the basis of the prosecution of the accused, being only involved in the possession of intoxicating liquor for the purpose of sale. The quantity of intoxicating liquor becomes an element. It was so treated in the charge of the court. Exclud-

ing the officers' testimony, we fail to perceive any evidence in the record showing that the appellant possessed more than one quart of intoxicating liquor or any other fact legitimately before the jury which would warrant either the charge given by the court on the effect of *prima facie evidence* as applied to more than one quart of intoxicating liquor.

Excluding the testimony of the officers, we fail to perceive any evidence in the record which warrants the conviction of the appellant. For that reason, the judgment is reversed and the cause remanded.

*Reversed and remanded.*