JAMES D. REED AND OTHERS v. R. M. LUCAS.

1. SEARCH-WARRANT—TRESPASS. A search-warrant issued upon an insufficient affidavit, affords no protection to those charged with committing trespass in its execution.

2. RECAPTION OF PERSONAL PROPERTY. But when one purchases personal property without taking a bill of sale, and from another not anthorized to sell, when the title to the property could only pass by written bill of sale, the recaption of the same by the true owner under color of a search-warrant, though based on insufficient affidavit, will afford the purchaser no cause of action against the owner.

3. UNLAWFUL PURCHASE CAN NEVER AFFECT TITLE. An unlawful taking or purchase of personal property can never affect the right of the true owner, when he has done nothing to weaken or destroy his right.

APPEAL from Goliad.   Tried below before the Hon. D. D. Claiborne.

Suit by Lucas against Reed and others, in trespass, claiming the value of one hundred and ninety-five hides, charged to have been taken by defendants below from possession of Lucas; ninety-seven of the same from his house, and ninety-eight from his wagons, on the road to Goliad.

The defense was made on an averment of ownership in right of Reed and his co-defendants, and as agents for others, of the one hundred and ninety-five hides, and that they had a right to reclaim them, as Lucas was moving them out of the county. It was shown that the hides were in the hands of Reed and his co-defendants, and those for whom they were agents; that they had never been sold by the owners; that Lucas had purchased them from strangers, taking no bills of sale, and that he had been cautioned by one of the parties claiming, not to buy hides in this brand. It was also shown that Lucas knew that some of the brands upon the hides belonged to defendants. The evidence shows that Reed and his co-defendants acted, in reclaiming the hides, under color of legal process—a *search-warrant*, which was however illegally issued, there being no sufficient affidavit to authorize its issuance.

After stating the penalties denounced by law against a party skinning an animal without the consent of the owner, the court charged as follows:

" If he fails to prosecute, and with proper proof convict the " person skinning, or knowingly purchasing the hides of such " of his dead animals as may have been skinned without his " consent, he has no legal right to have the hides seized in the " hands of a purchaser from the person skinning them, or from " any subsequent purchaser, because cattle hides are a marketable " commodity, the title of which passes by its purchase and de-" livery, the same as any other merchandise; and in a suit of " this kind, defendants cannot excuse themselves from the " actual damage sustained by a plaintiff on account of the fact " that they may not have pursued the remedy pointed out by " law.     *     *     *     *     *     *     *     *     *

" The jury will look to the evidence, and ascertain the value

" of the hides taken, if any, together with any other actual
" actual damages sustained by the plaintiff.    *    *    *
" The value of such hides, and other actual damages sustained
" in consequence thereof, and simple interest thereon until now,
" will be the amount of their verdict."

Verdict for plaintiff for five hundred and seven dollars, the
value of 195 hides—judgment accordingly, from which defend-
ants appealed.

Among the assignments of error are the following: 1. Error
in charge of the court; 2. Error in refusing a new trial.

*Lane & Payne*, for appellant, contended that the English
law of market overt had not been adopted, and consequently,
as a general rule, the title of the true owner cannot be lost
without his own free act and consent. Kent's Commentaries,
Vol. 2, Section 324, Comstock's edition, 390; see also Darne
*v.* Baldwin, 8 Mass., 518; Wheelright *v.* Depeyster, 1 Johns.,
479; Hosack *v.* Weaver, 1 Yeates, 478; Easton *v.* Worth-
ington, 5 Serg. and Rawle, 130; Browning *v.* Magill, 2 Harr.
and Johns., 308; McGrew *v.* Bronder, 14 Martin (Louis), 17:
Roland *v.* Gundy, 5 Ham. (O.), 202; Lance *v.* Cowen, 1 Dana
(Ken.), 195; Ventress *v.* Smith, 10 Peters, United States, 161;
Hoffman *v.* Carow, 22 Wendell, 285; also that the trespass
committed in recaption of personal property is justified when
the party wrongfully in possession is moving it away.

*Carleton & Robertson, Altgelt & Portis*, for appellee.

DEVINE, J. The appellee brought suit in the District Court
of Goliad county, at the February term of 1874, to recover five
thousand dollars damages for the unlawful and forcible taking
by the appellees, out of his warehouse, and from his wagons on
their way from Cummingsville, in the county of Goliad, to
Victoria, in the county of Victoria, 195 hides, and prayed for
a judgment for the value of the hides. The defendants,
Reed and McKinney, answered generally, denying the trespass,

and for special answers averred that they were each the re-
spective owners of a portion of the hides taken; that they were
informed by the hide inspector that their hides were in the
possession of defendant; that he had a portion of them on
two wagons, and was about to have them removed out of the
county; that they called on defendant and asked to see his bills
of sale, which he refused to let them see; that he refused to let
them know from whom he purchased the hides, or let them
examine the same; that with a view to obtain their property,
and the property of those for whom they were acting, they
made an affidavit and obtained a search-warrant from a justice
of the peace, which warrant was executed by removing the
fastening of the door, and searching the store-room of plaintiff;
that about the number charged by plaintiff was found in the
store-room and wagons of plaintiff, and by order of the justice,
who was present, turned over to defendants. Davis answered,
and stated that as constable of precinct No. 5 he executed the
search-warrant according to its terms. The defendants denied
all malice, claimed that they acted, as they believed, in obedi-
ence to law, and had simply sought for and obtained their prop-
erty and that of their principals.

Under the charge of the court, the jury found " the number
" of hides taken by defendants to be one hundred and ninety-
" five, and assessed their value at five hundred and seven dol-
" lars," with interest from the day of the taking, at eight per
cent., upon which the court rendered judgment against the
defendants for the amount found by the jury.

Of the assignments of error, the first and third embrace all
that it is necessary to consider. They are, " 1st, that the court
" erred in his charge to the jury," and " 3d, that the verdict
" rendered herein is contrary to law and the evidence."

That portion of the charge which informed the jury that the
affidavit made by Reed, McKinney, and Myers, and the search-
warrant issued by the justice of the peace by virtue of the affi-
davit, conferred no authority, and could not justify the trespass
by defendants, is not open to objection; it stated substantially

the law on that subject.    The suit, however, by the amendments of plaintiff, a portion of the charge of the court, the evidence in the case, and the finding of the jury, was treated as a suit for the recovery of the value of the property taken, and interest from the time of the seizure.    This is admitted by appellee in the brief, wherein he says " during the course of the " trial, plaintiff abandons his demand for exemplary damages." While the agency for, or the ownership of the property taken, might not be a defense to an illegal seizure from the possession of the plaintiff, it was competent, so far as the claim for the value of the property was concerned, for defendants to show that plaintiff was not the owner, and that they were the owners of a portion, and the agents authorized to represent the interest of others who were the owners of the remainder.

In view of this, the court erred in stating to the jury, " the " taking off the hide of any dead animal not his own, and " without the written authority of the owner, or some one having " charge of the same,    *    *    *    *    or any person knowingly " purchasing the same, shall be fined in the sum of ten dollars " for each and every hide so skinned or purchased."    One-half of the fines going to whoever might see proper to prosecute the offenders, and that if the owner " fails to prose- " cute, and by proper proof convict the person skinning, or " knowingly purchasing the hides of such of his dead animals " as may have been skinned without his consent, he has no " legal right to have the hides seized in the hands of a pur- " chaser from the person skinning them ; or from any subse- " quent purchasers, because cattle hides are a merchantable " commodity, the title of which passes by its purchase and de- " livery, the same as any other merchandise."

The law quoted was not enacted to give compensation to the owners of the cattle unlawfully skinned ; the one-half of the penalty can be secured by any other person who may prosecute the offenders ; it was intended as a punishment to the unlawful skinner and illegal purchaser, and by giving one-half of the fine to the prosecutor, to stimulate the diligence of those in-

clined to prosecute such offenses, it was not intended, and it certainly has not deprived the owner of any right heretofore existing, to recover his property. We are of opinion, that an unlawful taking, or an unlawful purchase, cannot divest any person of property that is his, by its being found in the possession of a purchaser, or when the real owner has done nothing to weaken or destroy his right, and we believe the principle will apply most forcibly in the present case. The plaintiff, by his own statement, as a witness for himself, admitted he had no bill of sale for even one of the hundred and ninety-five hides claimed by defendants as their own, or the property of those whom they were authorized to represent. Plaintiff could not tell, or would not give the name of any person who had sold him any of these hides; he admitted that he knew the brands on the hides to be the brands of defendants, or the brands of their principals, as named in their exhibits; that he was not authorized by any of these owners to purchase any of these hides, and that he had been warned by one of the defendants not to purchase any hides with his brand. The evidence proves he did purchase after that time hides belonging to the defendant who had forbidden it; of the hundred and ninety-five hides taken, over one hundred and seventy were shown to be the property of defendants, and of witnesses who testified that they had authorized some one of the defendants to look after and protect their stock or property from depredations. The evidence in this case shows that the plaintiff's claim to this property as a purchaser, rests upon an acquisition of the same in the face of Article 6568, Paschal's Digest, Act of 22d May, 1871, which prohibits the skinning or taking off "the hide of a "dead animal without the consent of the owner, and the know-"ingly purchasing the same," and which makes either act an offense. True, he had possession, but he shows that he obtained such possession by purchase of what is in substance stolen property, and with knowledge of the brands being those of the defendants, or those represented by them, the prohibition against his purchasing hides with defendant's brand upon the

same; his purchasing these hides from persons whose names he does not know, or is unwilling to state; his purchase without the exhibition of authority to the hide-skinners, and without any bill of sale from any of his vendors, place him as one in possession of property unlawfully obtained, with reasonable knowledge on his part that the persons selling had come into possession of this property unlawfully and criminally. The verdict was contrary to the law and the evidence. The judgment is reversed and the cause is remanded.

Reversed and remanded.