# WOLF *v.* COLORADO.

Nos. 17 and 18.   Argued October 19, 1948.—Decided June 27, 1949.

*Philip Hornbein* argued the cause for petitioner.   With him on the brief were *Philip Hornbein, Jr.* and *Donald M. Shere.*

*James S. Henderson,* Assistant Attorney General of Colorado, argued the cause for respondent.   With him on the brief was *H. Lawrence Hinkley,* Attorney General.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The precise question for consideration is this: Does a conviction by a State court for a State offense deny the "due process of law" required by the Fourteenth Amendment, solely because evidence that was admitted

at the trial was obtained under circumstances which would have rendered it inadmissible in a prosecution for violation of a federal law in a court of the United States because there deemed to be an infraction of the Fourth Amendment as applied in *Weeks* v. *United States,* 232 U. S. 383? The Supreme Court of Colorado has sustained convictions in which such evidence was admitted, 117 Col. 279, 187 P. 2d 926; 117 Col. 321, 187 P. 2d 928, and we brought the cases here. 333 U. S. 879.

Unlike the specific requirements and restrictions placed by the Bill of Rights (Amendments I to VIII) upon the administration of criminal justice by federal authority, the Fourteenth Amendment did not subject criminal justice in the States to specific limitations. The notion that the "due process of law" guaranteed by the Fourteenth Amendment is shorthand for the first eight amendments of the Constitution and thereby incorporates them has been rejected by this Court again and again, after impressive consideration. See, e. g., *Hurtado* v. *California,* 110 U. S. 516; *Twining* v. *New Jersey,* 211 U. S. 78; *Brown* v. *Mississippi,* 297 U. S. 278; *Palko* v. *Connecticut,* 302 U. S. 319. Only the other day the Court reaffirmed this rejection after thorough reexamination of the scope and function of the Due Process Clause of the Fourteenth Amendment. *Adamson* v. *California,* 332 U. S. 46. The issue is closed.

For purposes of ascertaining the restrictions which the Due Process Clause imposed upon the States in the enforcement of their criminal law, we adhere to the views expressed in *Palko* v. *Connecticut, supra,* 302 U. S. 319. That decision speaks to us with the great weight of the authority, particularly in matters of civil liberty, of a court that included Mr. Chief Justice Hughes, Mr. Justice Brandeis, Mr. Justice Stone and Mr. Justice Cardozo, to name only the dead. In rejecting the suggestion that the Due Process Clause incorporated the original Bill of Rights, Mr. Justice Cardozo reaffirmed on behalf of that

Court a different but deeper and more pervasive conception of the Due Process Clause. This Clause exacts from the States for the lowliest and the most outcast all that is "implicit in the concept of ordered liberty." 302 U. S. at 325.

Due process of law thus conveys neither formal nor fixed nor narrow requirements. It is the compendious expression for all those rights which the courts must enforce because they are basic to our free society. But basic rights do not become petrified as of any one time, even though, as a matter of human experience, some may not too rhetorically be called eternal verities. It is of the very nature of a free society to advance in its standards of what is deemed reasonable and right. Representing as it does a living principle, due process is not confined within a permanent catalogue of what may at a given time be deemed the limits or the essentials of fundamental rights.

To rely on a tidy formula for the easy determination of what is a fundamental right for purposes of legal enforcement may satisfy a longing for certainty but ignores the movements of a free society. It belittles the scale of the conception of due process. The real clue to the problem confronting the judiciary in the application of the Due Process Clause is not to ask where the line is once and for all to be drawn but to recognize that it is for the Court to draw it by the gradual and empiric process of "inclusion and exclusion." *Davidson* v. *New Orleans*, 96 U. S. 97, 104. This was the Court's insight when first called upon to consider the problem; to this insight the Court has on the whole been faithful as case after case has come before it since *Davidson* v. *New Orleans* was decided.

The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society. It is therefore implicit in "the concept of ordered liberty" and as such enforceable against the States through the Due Process

Clause. The knock at the door, whether by day or by night, as a prelude to a search, without authority of law but solely on the authority of the police, did not need the commentary of recent history to be condemned as inconsistent with the conception of human rights enshrined in the history and the basic constitutional documents of English-speaking peoples.

Accordingly, we have no hesitation in saying that were a State affirmatively to sanction such police incursion into privacy it would run counter to the guaranty of the Fourteenth Amendment. But the ways of enforcing such a basic right raise questions of a different order. How such arbitrary conduct should be checked, what remedies against it should be afforded, the means by which the right should be made effective, are all questions that are not to be so dogmatically answered as to preclude the varying solutions which spring from an allowable range of judgment on issues not susceptible of quantitative solution.

In *Weeks* v. *United States, supra,* this Court held that in a federal prosecution the Fourth Amendment barred the use of evidence secured through an illegal search and seizure. This ruling was made for the first time in 1914. It was not derived from the explicit requirements of the Fourth Amendment; it was not based on legislation expressing Congressional policy in the enforcement of the Constitution. The decision was a matter of judicial implication. Since then it has been frequently applied and we stoutly adhere to it. But the immediate question is whether the basic right to protection against arbitrary intrusion by the police demands the exclusion of logically relevant evidence obtained by an unreasonable search and seizure because, in a federal prosecution for a federal crime, it would be excluded. As a matter of inherent reason, one would suppose this to be an issue as to which men with complete devotion to the protection of the right

of privacy might give different answers.   When we find
that in fact most of the English-speaking world does not
regard as vital to such protection the exclusion of evi-
dence thus obtained, we must hesitate to treat this rem-
edy as an essential ingredient of the right.   The contra-
riety of views of the States is particularly impressive in
view of the careful reconsideration which they have given
the problem in the light of the *Weeks* decision.

I. Before the *Weeks* decision 27 States had passed on
the admissibility of evidence obtained by unlawful
search and seizure.

    (a) Of these, 26 States opposed the *Weeks* doc-
trine.   (See Appendix, Table A.)

    (b) Of these, 1 State anticipated the *Weeks* doc-
trine.   (Table B.)

II. Since the *Weeks* decision 47 States all told have
passed on the *Weeks* doctrine.   (Table C.)

    (a) Of these, 20 passed on it for the first time.

        (1) Of the foregoing States, 6 followed
the *Weeks* doctrine.   (Table D.)

        (2) Of the foregoing States, 14 rejected
the *Weeks* doctrine.   (Table E.)

    (b) Of these, 26 States reviewed prior decisions
contrary to the *Weeks* doctrine.

        (1) Of these, 10 States have followed
*Weeks*, overruling or distinguish-
ing their prior decisions.   (Ta-
ble F.)

        (2) Of these, 16 States adhered to their
prior decisions against *Weeks*.
(Table G.)

    (c) Of these, 1 State repudiated its prior formu-
lation of the *Weeks* doctrine.   (Table H.)

III. As of today 31 States reject the *Weeks* doctrine, 16
States are in agreement with it.   (Table I.)

IV. Of 10 jurisdictions within the United Kingdom and the British Commonwealth of Nations which have passed on the question, none has held evidence obtained by illegal search and seizure inadmissible. (Table J.)

The jurisdictions which have rejected the *Weeks* doctrine have not left the right to privacy without other means of protection.[1]   Indeed, the exclusion of evidence

---

[1] The common law provides actions for damages against the searching officer, e. g., *Entick* v. *Carrington*, 2 Wils. 275, 19 How. St. Tr. 1029; *Grumon* v. *Raymond*, 1 Conn. 40; *Sandford* v. *Nichols*, 13 Mass. 286; *Halsted* v. *Brice*, 13 Mo. 171; *Hussey* v. *Davis*, 58 N. H. 317; *Reed* v. *Lucas*, 42 Texas 529; against one who procures the issuance of a warrant maliciously and without probable cause, e. g., *Gulsby* v. *Louisville & N. R. Co.*, 167 Ala. 122, 52 So. 392; *Whitson* v. *May*, 71 Ind. 269; *Krehbiel* v. *Henkle*, 152 Iowa 604, 129 N. W. 945; *Olson* v. *Tvete*, 46 Minn. 225, 48 N. W. 914; *Boeger* v. *Langenberg*, 97 Mo. 390, 11 S. W. 223; *Doane* v. *Anderson*, 60 Hun 586, 15 N. Y. S. 459; *Shall* v. *Minneapolis, St. P. & S. S. M. R. Co.*, 156 Wis. 195, 145 N. W. 649; against a magistrate who has acted without jurisdiction in issuing a warrant, e. g., *Williams* v. *Kozak*, 280 F. 373 (C. A. 4th Cir.); *Grumon* v. *Raymond*, 1 Conn. 40; *Kennedy* v. *Terrill*, Hardin (Ky.) 490; *Shaw* v. *Moon*, 117 Ore. 558, 245 P. 318; and against persons assisting in the execution of an illegal search, e. g., *Hebrew* v. *Pulis*, 73 N. J. L. 621, 625, 64 A. 121, 122; *Cartwright* v. *Canode*, 138 S. W. 792 (Tex. Civ. App.), aff'd, 106 Texas 502, 171 S. W. 696.   One may also without liability use force to resist an unlawful search.   E. g., *Commonwealth* v. *Martin*, 105 Mass. 178; *State* v. *Mann*, 27 N. C. 45.

Statutory sanctions in the main provide for the punishment of one maliciously procuring a search warrant or willfully exceeding his authority in exercising it.   *E. g.*, 18 U. S. C. (1946 ed.) §§ 630, 631; Ala. Code, Tit. 15, § 99 (1940); Ariz. Code Ann. § 44–3513 (1939); Fla. Stat. Ann. §§ 933.16, 933.17 (1944); Iowa Code §§ 751.38, 751.39 (1946); Mont. Rev. Code Ann. §§ 10948, 10952 (1935); Nev. Comp. Laws §§ 10425, 10426 (1929); N. Y. Crim. Code §§ 811, 812, N. Y. Penal Law §§ 1786, 1847; N. D. Rev. Code §§ 12–1707, 12–1708 (1943);   Okla. Stat. Ann., Tit. 21, §§ 536, 585, Tit. 22, §§ 1239, 1240 (1937);   Ore. Comp. Laws Ann. § 26–1717 (1940);   S. D. Code §§ 13.1213, 13.1234, 34.9904, 34.9905 (1939); Tenn. Code Ann. § 11905 (1934).   Some statutes more broadly penalize unlawful searches.

is a remedy which directly serves only to protect those upon whose person or premises something incriminating has been found. We cannot, therefore, regard it as a departure from basic standards to remand such persons, together with those who emerge scatheless from a search, to the remedies of private action and such protection as the internal discipline of the police, under the eyes of an alert public opinion, may afford. Granting that in practice the exclusion of evidence may be an effective way of deterring unreasonable searches, it is not for this Court to condemn as falling below the minimal standards assured by the Due Process Clause a State's reliance upon other methods which, if consistently enforced, would be equally effective. Weighty testimony against such an insistence on our own view is furnished by the opinion of Mr. Justice (then Judge) Cardozo in *People* v. *Defore,* 242 N. Y. 13, 150 N. E. 585.[2] We cannot brush aside the experience of States which deem the incidence of such

---

*E. g.,* 18 U. S. C. (1946 ed.) § 53a; Idaho Code Ann. §§ 17–1004, 17–1024 (1932); Minn. Stat. §§ 613.54, 621.17 (1945); Va. Code Ann. § 4822d (Michie, 1942); Wash. Rev. Stat. Ann. §§ 2240–1, 2240–2. Virginia also makes punishable one who issues a general search warrant or a warrant unsupported by affidavit. Va. Code Ann. § 4822e (Michie, 1942). A few States have provided statutory civil remedies. See, *e. g.,* Ga. Code Ann. § 27–301 (1935); Ill. Rev. Stat., c. 38, § 698 (Smith-Hurd, 1935); Miss. Code Ann. § 1592 (1942). And in one State, misuse of a search warrant may be an abuse of process punishable as contempt of court. See Mich. Stat. Ann. § 27.511 (1938).

[2] "We hold, then, with the defendant that the evidence against him was the outcome of a trespass. The officer might have been resisted, or sued for damages, or even prosecuted for oppression (Penal Law, §§ 1846, 1847). He was subject to removal or other discipline at the hands of his superiors. These consequences are undisputed. The defendant would add another. We must determine whether evidence of criminality, procured by an act of trespass, is to be rejected as incompetent for the misconduct of the trespasser. . . .

"Those judgments [*Weeks* v. *United States* and cases which followed it] do not bind us, for they construe provisions of the Federal

32

conduct by the police too slight to call for a deterrent remedy not by way of disciplinary measures but by overriding the relevant rules of evidence. There are, moreover, reasons for excluding evidence unreasonably obtained by the federal police which are less compelling in the case of police under State or local authority. The public opinion of a community can far more effectively be exerted against oppressive conduct on the part of police directly responsible to the community itself than can local opinion, sporadically aroused, be brought to bear upon

Constitution, the Fourth and Fifth Amendments, not applicable to the States. Even though not binding, they merit our attentive scrutiny. . . .

"In so holding [*i. e.*, that evidence procured by unlawful search is not incompetent], we are not unmindful of the argument that unless the evidence is excluded, the statute becomes a form and its protection an illusion. This has a strange sound when the immunity is viewed in the light of its origin and history. The rule now embodied in the statute was received into English law as the outcome of the prosecution of Wilkes and Entick . . . . Wilkes sued the messengers who had ransacked his papers, and recovered a verdict of £4,000 against one and £1,000 against the other. Entick, too, had a substantial verdict . . . . We do not know whether the public, represented by its juries, is to-day more indifferent to its liberties than it was when the immunity was born. If so, the change of sentiment without out more does not work a change of remedy. Other sanctions, penal and disciplinary, supplementing the right to damages, have already been enumerated. No doubt the protection of the statute would be greater from the point of view of the individual whose privacy had been invaded if the government were required to ignore what it had learned through the invasion. The question is whether protection for the individual would not be gained at a disproportionate loss of protection for society. On the one side is the social need that crime shall be repressed. On the other, the social need that law shall not be flouted by the insolence of office. There are dangers in any choice. The rule of the *Adams* case [176 N. Y. 351, 68 N. E. 636] strikes a balance between opposing interests." 242 N. Y. at 19, 20, 24–25, 150 N. E. at 586–87, 587, 588–89.

remote authority pervasively exerted throughout the country.

We hold, therefore, that in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure. And though we have interpreted the Fourth Amendment to forbid the admission of such evidence, a different question would be presented if Congress under its legislative powers were to pass a statute purporting to negate the *Weeks* doctrine. We would then be faced with the problem of the respect to be accorded the legislative judgment on an issue as to which, in default of that judgment, we have been forced to depend upon our own. Problems of a converse character, also not before us, would be presented should Congress under § 5 of the Fourteenth Amendment undertake to enforce the rights there guaranteed by attempting to make the *Weeks* doctrine binding upon the States.

*Affirmed.*

## APPENDIX.*

### TABLE A.

STATES WHICH OPPOSED THE *Weeks* DOCTRINE BEFORE
THE *Weeks* CASE HAD BEEN DECIDED.

ALA.      *Shields* v. *State,* 104 Ala. 35, 16 So. 85.

ARK.      *Starchman* v. *State,* 62 Ark. 538, 36 S. W. 940.

CONN.     *State* v. *Griswold,* 67 Conn. 290, 34 A. 1046.

GA.       *Williams* v. *State,* 100 Ga. 511, 28 S. E. 624.

IDAHO     *State* v. *Bond,* 12 Idaho 424, 439, 86 P. 43, 47.

ILL.      *Siebert* v. *People,* 143 Ill. 571, 583, 32 N. E. 431, 434.

KAN.      *State* v. *Miller,* 63 Kan. 62, 64 P. 1033.

ME.       See *State* v. *Gorham,* 65 Me. 270, 272.

MD.       *Lawrence* v. *State,* 103 Md. 17, 35, 63 A. 96, 103.

---

*In the case of jurisdictions which have decided more than one case in point, the following Tables cite only the leading case.

34

MASS.   *Commonwealth* v. *Dana,* 2 Metc. 329.

MICH.   *People* v. *Aldorfer,* 164 Mich. 676, 130 N. W. 351.

MINN.   *State* v. *Strait,* 94 Minn. 384, 102 N. W. 913.

MO.   *State* v. *Pomeroy,* 130 Mo. 489, 32 S. W. 1002.

MONT.   See *State* v. *Fuller,* 34 Mont. 12, 19, 85 P. 369, 373.

NEB.   *Geiger* v. *State,* 6 Neb. 545.

N. H.   *State* v. *Flynn,* 36 N. H. 64.

N. Y.   *People* v. *Adams,* 176 N. Y. 351, 68 N. E. 636.

N. C.   *State* v. *Wallace,* 162 N. C. 622, 78 S. E. 1.

OKLA.   *Silva* v. *State,* 6 Okla. Cr. 97, 116 P. 199.

ORE.   *State* v. *McDaniel,* 39 Ore. 161, 169–70, 65 P. 520, 523.

S. C.   *State* v. *Atkinson,* 40 S. C. 363, 371, 18 S. E. 1021, 1024.

S. D.   *State* v. *Madison,* 23 S. D. 584, 591, 122 N. W. 647, 650.

TENN.   *Cohn* v. *State,* 120 Tenn. 61, 109 S. W. 1149.

VT.   *State* v. *Mathers,* 64 Vt. 101, 23 A. 590.

WASH.   *State* v. *Royce,* 38 Wash. 111, 80 P. 268.

W. VA.   See *State* v. *Edwards,* 51 W. Va. 220, 229, 41 S. E. 429, 432–33.

## TABLE B.

STATE WHICH HAD FORMULATED THE *Weeks* DOCTRINE
BEFORE THE *Weeks* DECISION.

IOWA   *State* v. *Sheridan,* 121 Iowa 164, 96 N. W. 730.

## TABLE C.

STATES WHICH HAVE PASSED ON THE *Weeks* DOCTRINE
SINCE THE *Weeks* CASE WAS DECIDED.

Every State except Rhode Island. But see *State* v. *Lorenzo,* 72 R. I. 175, 48 A. 2d 407 (holding that defendant had consented to the search, but that, even if he had not and even if the federal rule applied, the evidence was admissible because no timely motion to suppress had been made).

## TABLE D.

STATES WHICH PASSED ON THE *Weeks* DOCTRINE FOR THE FIRST TIME AFTER THE *Weeks* DECISION AND IN SO DOING FOLLOWED IT.

FLA.    *Atz* v. *Andrews,* 84 Fla. 43, 94 So. 329.

IND.    *Flum* v. *State,* 193 Ind. 585, 141 N. E. 353.

KY.    *Youman* v. *Commonwealth,* 189 Ky. 152, 224 S. W. 860.

MISS.    *Tucker* v. *State,* 128 Miss. 211, 90 So. 845.

WIS.    *Hoyer* v. *State,* 180 Wis. 407, 193 N. W. 89.

WYO.    *State* v. *George,* 32 Wyo. 223, 231 P. 683.

## TABLE E.

STATES WHICH PASSED ON THE *Weeks* DOCTRINE FOR THE FIRST TIME AFTER THE *Weeks* DECISION AND IN SO DOING REJECTED IT.

ARIZ.    *Argetakis* v. *State,* 24 Ariz. 599, 212, P. 372.

CALIF.    *People* v. *Mayen,* 188 Calif. 237, 205 P. 435 (adopting the general rule but distinguishing the cases then decided by this Court on the ground that they apply only when a timely motion for return of the property seized has been made).

COLO.    *Massantonio* v. *People,* 77 Colo. 392, 236 P. 1019.

DEL.    *State* v. *Chuchola,* 32 Del. 133, 120 A. 212 (distinguishing this Court's decisions).

LA.    *State* v. *Fleckinger,* 152 La. 337, 93 So. 115. The constitutional convention of 1921 refused to adopt an amendment incorporating the federal rule. See *State* v. *Eddins,* 161 La. 240, 108 So. 468.

NEV.    *State* v. *Chin Gim,* 47 Nev. 431, 224 P. 798.

N. J.    *State* v. *Black,* 5 N. J. Misc. 48, 135 A. 685.

N. M.    *State* v. *Dillon,* 34 N. M. 366, 281 P. 474.

N. D.    *State* v. *Fahn,* 53 N. D. 203, 205 N. W. 67.

OHIO    *State* v. *Lindway,* 131 Ohio St. 166, 2 N. E. 2d 490.

PA.    *Commonwealth* v. *Dabbierio,* 290 Pa. 174, 138 A. 679.

TEX.    *Welchek* v. *State,* 93 Tex. Cr. Rep. 271, 247 S. W. 524. In 1925 a statute changed the rule by providing that "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State

of Texas, or of the Constitution of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Texas Laws 1925, c. 49, as amended, 2 Vernon's Tex. Stat., 1948 (Code of Crim. Proc.), Art. 727a.

UTAH    *State* v. *Aime,* 62 Utah 476, 220 P. 704.

VA.    *Hall* v. *Commonwealth,* 138 Va. 727, 121 S. E. 154.

## TABLE F.

STATES WHICH, AFTER THE *Weeks* DECISION, OVERRULED OR DISTINGUISHED PRIOR CONTRARY DECISIONS.

IDAHO    Idaho expressly refused to follow the *Weeks* decision in *State* v. *Myers,* 36 Idaho 396, 211 P. 440, but repudiated the *Myers* case and adopted the federal rule in *State* v. *Arregui,* 44 Idaho 43, 254 P. 788.

ILL.    After two cases following the former state rule, Illinois adopted the federal rule in *People* v. *Castree,* 311 Ill. 392, 143 N. E. 112.

MICH.    *People* v. *Marxhausen,* 204 Mich. 559, 171 N. W. 557 (distinguishing earlier cases on the ground that in them no preliminary motion to suppress had been made).

MO.    *State* v. *Graham,* 295 Mo. 695, 247 S. W. 194, supported the old rule in a dictum, but the federal rule was adopted in *State* v. *Owens,* 302 Mo. 348, 259 S. W. 100 (distinguishing earlier cases on the ground that in them no preliminary motion to dismiss had been made).

MONT.    *State ex rel. King* v. *District Court,* 70 Mont. 191, 224 P. 862.

OKLA.    *Gore* v. *State,* 24 Okla. Cr. 394, 218 P. 545.

S. D.    *State* v. *Gooder,* 57 S. D. 619, 234 N. W. 610. But cf. S. D. Laws 1935, c. 96, now S. D. Code § 34.1102 (1939), amending Rev. Code 1919, § 4606 (all evidence admis-

sible under a valid search warrant is admissible notwithstanding defects in the issuance of the warrant).

TENN. *Hughes* v. *State,* 145 Tenn. 544, 238 S. W. 588 (distinguishing *Cohn* v. *State, supra,* Table A).

WASH. *State* v. *Gibbons,* 118 Wash. 171, 203 P. 390.

W. VA. *State* v. *Andrews,* 91 W. Va. 720, 114 S. E. 257 (distinguishing earlier cases).

## TABLE G.

STATES WHICH, AFTER THE *Weeks* DECISION, REVIEWED PRIOR CONTRARY DECISIONS AND IN SO DOING ADHERED TO THOSE DECISIONS.

ALA. *Banks* v. *State,* 207 Ala. 179, 93 So. 293.

ARK. *Benson* v. *State,* 149 Ark. 633, 233 S. W. 758.

CONN. *State* v. *Reynolds,* 101 Conn. 224, 125 A. 636.

GA. *Jackson* v. *State,* 156 Ga. 647, 119 S. E. 525.

KAN. *State* v. *Johnson,* 116 Kan. 58, 226 P. 245.

ME. *State* v. *Schoppe,* 113 Me. 10, 16, 92 A. 867, 869 (alternative holding, not noticing *Weeks*).

MD. *Meisinger* v. *State,* 155 Md. 195, 141 A. 536, 142 A. 190. But cf. Md. Laws 1929, c. 194, as amended, Md. Code Ann., Art. 35, § 5 (1947 Supp.) (in trial of misdemeanors, evidence obtained by illegal search and seizure is inadmissible).

MASS. *Commonwealth* v. *Wilkins,* 243 Mass. 356, 138 N. E. 11.

MINN. *State* v. *Pluth,* 157 Minn. 145, 195 N. W. 789.

NEB. *Billings* v. *State,* 109 Neb. 596, 191 N. W. 721.

N. H. *State* v. *Agalos,* 79 N. H. 241, 242, 107 A. 314, 315 (not noticing *Weeks*).

N. Y. *People* v. *Defore,* 242 N. Y. 13, 150 N. E. 585; *People* v. *Richter's Jewelers,* 291 N. Y. 161, 169, 51 N. E. 2d 690, 693 (holding that adoption of Amendment to State Con-

38

stitution in same language as Civil Rights Law construed in the *Defore* case is not occasion for changing interpretation, especially since proceedings of the convention which framed the amendment show that no change was intended).

N. C.   *State* v. *Simmons,* 183 N. C. 684, 110 S. E. 591 (distinguishing between evidentiary articles and corpus delicti).

ORE.   See *State* v. *Folkes,* 174 Ore. 568, 588–89, 150 P. 2d 17, 25. But see *State* v. *Laundy,* 103 Ore. 443, 493–95, 204 P. 958, 974–75.

S. C.   After granting a motion to return illegally seized property in *Blacksburg* v. *Beam,* 104 S. C. 146, 88 S. E. 441, South Carolina reaffirmed its agreement with the general rule in *State* v. *Green,* 121 S. C. 230, 114 S. E. 317.

VT.   *State* v. *Stacy,* 104 Vt. 379, 401, 160 A. 257, 266.

## TABLE H.

STATE WHICH HAS REPUDIATED ITS PRIOR FORMULATION
OF THE *Weeks* DOCTRINE.

IOWA   *State* v. *Rowley,* 197 Iowa 977, 195 N. W. 881 (withdrawing earlier opinion in 187 N. W. 7).

## TABLE I.

SUMMARY OF PRESENT POSITION OF STATES WHICH HAVE
PASSED ON THE *Weeks* DOCTRINE.

(a) States that reject *Weeks:*
Ala., Ariz., Ark., Calif., Colo., Conn., Del., Ga., Iowa, Kan., La., Me., Md., Mass., Minn., Neb., Nev., N. H., N. J., N. M., N. Y., N. C., N. D., Ohio, Ore., Pa., S. C., Texas, Utah, Vt., Va.

(b) States that are in agreement with *Weeks:*
Fla., Idaho, Ill., Ind., Ky., Mich., Miss., Mo., Mont., Okla., S. D., Tenn., Wash., W. Va., Wis., Wyo.

## TABLE J.

JURISDICTIONS OF THE UNITED KINGDOM AND THE BRITISH COM-
MONWEALTH OF NATIONS WHICH HAVE HELD ADMISSIBLE
EVIDENCE OBTAINED BY ILLEGAL SEARCH AND SEIZURE.

AUSTRALIA    *Miller* v. *Noblet*, [1927] S. A. S. R. 385.

CANADA
   ALTA.    *Rex* v. *Nelson*, [1922] 2 W. W. R. 381, 69 D. L. R. 180.
   MAN.    *Rex* v. *Duroussel*, 41 Man. 15, [1933] 2 D. L. R. 446.
   ONT.    *Regina* v. *Doyle*, 12 Ont. 347.
   SASK.    *Rex* v. *Kostachuk*, 24 Sask. 485, 54 Can. C. C. 189.

ENGLAND    See *Elias* v. *Pasmore*, [1934] 2 K. B. 164.

INDIA
   ALL.    *Ali Ahmad Khan* v. *Emperor*, 81 I. C. 615 (1).
   CAL.    *Baldeo Bin* v. *Emperor*, 142 I. C. 639.
   RANG.    *Chwa Hum Htive* v. *Emperor*, 143 I. C. 824.

SCOTLAND    See *Hodgson* v. *Macpherson*, [1913] S. C. (J.) 68, 73.

MR. JUSTICE BLACK, concurring.

In this case petitioner was convicted of a crime in a state court on evidence obtained by a search and seizure conducted in a manner that this Court has held "unreasonable" and therefore in violation of the Fourth Amendment. And under a rule of evidence adopted by this Court evidence so obtained by federal officers cannot be used against defendants in federal courts. For reasons stated in my dissenting opinion in *Adamson* v. *California*, 332 U. S. 46, 68, I agree with the conclusion of the Court that the Fourth Amendment's prohibition of "unreasonable searches and seizures" is enforceable against the states. Consequently, I should be for reversal of this case if I thought the Fourth Amendment not only prohibited "unreasonable searches and seizures," but also, of itself, barred the use of evidence so unlawfully obtained. But I agree with what appears to be a plain implication of the Court's opinion that the federal exclusionary rule is

not a command of the Fourth Amendment but is a judicially created rule of evidence which Congress might negate. See *McNabb* v. *United States,* 318 U. S. 332. This leads me to concur in the Court's judgment of affirmance.

It is not amiss to repeat my belief that the Fourteenth Amendment was intended to make the Fourth Amendment in its entirety applicable to the states. The Fourth Amendment was designed to protect people against unrestrained searches and seizures by sheriffs, policemen and other law enforcement officers. Such protection is an essential in a free society. And I am unable to agree that the protection of people from over-zealous or ruthless state officers is any less essential in a country of "ordered liberty" than is the protection of people from over-zealous or ruthless federal officers. Certainly there are far more state than federal enforcement officers and their activities, up to now, have more frequently and closely touched the intimate daily lives of people than have the activities of federal officers. A state officer's "knock at the door . . . as a prelude to a search, without authority of law," may be, as our experience shows, just as ominous to "ordered liberty" as though the knock were made by a federal officer.

MR. JUSTICE DOUGLAS, dissenting.

I believe for the reasons stated by MR. JUSTICE BLACK in his dissent in *Adamson* v. *California,* 332 U. S. 46, 68, that the Fourth Amendment is applicable to the States. I agree with MR. JUSTICE MURPHY that the evidence obtained in violation of it *must* be excluded in state prosecutions as well as in federal prosecutions, since in absence of that rule of evidence the Amendment would have no effective sanction. I also agree with him that under that

test this evidence was improperly admitted and that the judgments of conviction must be reversed.

MR. JUSTICE MURPHY, with whom MR. JUSTICE RUTLEDGE joins, dissenting.

It is disheartening to find so much that is right in an opinion which seems to me so fundamentally wrong. Of course I agree with the Court that the Fourteenth Amendment prohibits activities which are proscribed by the search and seizure clause of the Fourth Amendment. See my dissenting views, and those of MR. JUSTICE BLACK, in *Adamson* v. *California,* 332 U. S. 46, 68, 123. Quite apart from the blanket application of the Bill of Rights to the States, a devotee of democracy would ill suit his name were he to suggest that his home's protection against unlicensed governmental invasion was not "of the very essence of a scheme of ordered liberty." *Palko* v. *Connecticut,* 302 U. S. 319, 325. It is difficult for me to understand how the Court can go this far and yet be unwilling to make the step which can give some meaning to the pronouncements it utters.

Imagination and zeal may invent a dozen methods to give content to the commands of the Fourth Amendment. But this Court is limited to the remedies currently available. It cannot legislate the ideal system. If we would attempt the enforcement of the search and seizure clause in the ordinary case today, we are limited to three devices: judicial exclusion of the illegally obtained evidence; criminal prosecution of violators; and civil action against violators in the action of trespass.

Alternatives are deceptive. Their very statement conveys the impression that one possibility is as effective as the next. In this case their statement is blinding. For there is but one alternative to the rule of exclusion. That is no sanction at all.

This has been perfectly clear since 1914, when a unanimous Court decided *Weeks* v. *United States,* 232 U. S. 383, 393. "If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense," we said, "the protection of the Fourth Amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution." "It reduces the Fourth Amendment to a form of words." Holmes, J., for the Court, in *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 392.

Today the Court wipes those statements from the books with its bland citation of "other remedies." Little need be said concerning the possibilities of criminal prosecution. Self-scrutiny is a lofty ideal, but its exaltation reaches new heights if we expect a District Attorney to prosecute himself or his associates for well-meaning violations of the search and seizure clause during a raid the District Attorney or his associates have ordered.[1] But there is an appealing ring in another alternative. A trespass action for damages is a venerable means of securing reparation for unauthorized invasion of the home. Why not put the old writ to a new use? When the Court cites cases permitting the action, the remedy seems complete.

But what an illusory remedy this is, if by "remedy" we mean a positive deterrent to police and prosecutors

---

[1] See Pound, Criminal Justice in America (New York, 1930): "Under our legal system the way of the prosecutor is hard, and the need of 'getting results' puts pressure upon prosecutors to . . . indulge in that lawless enforcement of law which produces a vicious circle of disrespect for law." P. 186.

And note the statement of the Wickersham Commission, with reference to arrests: ". . . in case of persons of no influence or little or no means the legal restrictions are not likely to give an officer serious trouble." II National Commission on Law Observance and Enforcement, Report on Criminal Procedure (1931), p. 19.

tempted to violate the Fourth Amendment. The appealing ring softens when we recall that in a trespass action the measure of damages is simply the extent of the injury to physical property. If the officer searches with care, he can avoid all but nominal damages—a penny, or a dollar. Are punitive damages possible? Perhaps. But a few states permit none, whatever the circumstances.[2] In those that do, the plaintiff must show the real ill will or malice of the defendant,[3] and surely it is not unreasonable to assume that one in honest pursuit of crime bears no malice toward the search victim. If that burden is carried, recovery may yet be defeated by the rule that there must be physical damages before punitive damages may be awarded.[4] In addition, some states limit punitive damages to the actual expenses of litigation. See 61 Harv. L. Rev. 113, 119–120. Others demand some arbitrary ratio between actual and punitive damages before a verdict may stand. See Morris, *Punitive Damages in Tort Cases,* 44 Harv. L. Rev. 1173, 1180–1181. Even assuming the ill will of the officer, his reasonable grounds for belief that the home he searched harbored evidence of crime is admissible in mitigation of punitive damages. *Gamble* v. *Keyes,* 35 S. D. 644, 153 N. W. 888; *Simpson* v. *McCaffrey,* 13 Ohio 508. The bad reputation of the plaintiff is likewise admissible. *Banfill* v. *Byrd,* 122 Miss. 288, 84 So. 227. If the evidence seized was actually used at a trial, that fact has been

---

[2] See McCormick, Damages, § 78. See Willis, *Measure of Damages When Property is Wrongfully Taken by a Private Individual,* 22 Harv. L. Rev. 419.

[3] *Id.,* § 79. See *Fennemore* v. *Armstrong,* 29 Del. 35, 96 A. 204.

[4] "It is a well settled and almost universally accepted rule in the law of damages that a finding of exemplary damages must be predicated upon a finding of actual damages." 17 Iowa L. Rev. 413, 414. This appears to be an overstatement. See McCormick, *supra,* § 83; Restatement IV, Torts, § 908, comment *c.*

held a complete justification of the search, and a defense against the trespass action. *Elias* v. *Pasmore* [1934] 2 K. B. 164. And even if the plaintiff hurdles all these obstacles, and gains a substantial verdict, the individual officer's finances may well make the judgment useless— for the municipality, of course, is not liable without its consent. Is it surprising that there is so little in the books concerning trespass actions for violation of the search and seizure clause?

The conclusion is inescapable that but one remedy exists to deter violations of the search and seizure clause. That is the rule which excludes illegally obtained evidence. Only by exclusion can we impress upon the zealous prosecutor that violation of the Constitution will do him no good. And only when that point is driven home can the prosecutor be expected to emphasize the importance of observing constitutional demands in his instructions to the police.

If proof of the efficacy of the federal rule were needed, there is testimony in abundance in the recruit training programs and in-service courses provided the police in states which follow the federal rule.[5] St. Louis, for example, demands extensive training in the rules of search and seizure, with emphasis upon the ease with which a case may collapse if it depends upon evidence obtained

---

[5] The material which follows is gleaned from letters and other material from Commissioners of Police and Chiefs of Police in twenty-six cities. Thirty-eight large cities in the United States were selected at random, and inquiries directed concerning the instructions provided police on the rules of search and seizure. Twenty-six replies have been received to date. Those of any significance are mentioned in the text of this opinion. The sample is believed to be representative, but it cannot, of course, substitute for a thoroughgoing comparison of present-day police procedures by a completely objective observer. A study of this kind would be of inestimable value.

unlawfully. Current court decisions are digested and read at roll calls. The same general pattern prevails in Washington, D. C.[6] In Dallas, officers are thoroughly briefed and instructed that "the courts will follow the rules very closely and will detect any frauds."[7] In Milwaukee, a stout volume on the law of arrest and search and seizure is made the basis of extended instruction.[8] Officer preparation in the applicable rules in Jackson, Mississippi, has included the lectures of an Associate Justice of the Mississippi Supreme Court. The instructions on evidence and search and seizure given to trainees in San Antonio carefully note the rule of exclusion in Texas, and close with this statement: "Every police officer should know the laws and the rules of evidence. Upon knowledge of these facts determines whether the . . . defendant will be convicted or acquitted. . . . When you investigate a case . . . remember throughout your investigation that only admissible evidence can be used."

But in New York City, we are informed simply that "copies of the State Penal Law and Code of Criminal Procedure" are given to officers, and that they are "kept advised" that illegally obtained evidence may be admitted in New York courts. In Baltimore, a "Digest of Laws" is distributed, and it is made clear that the

---

[6] *E. g.*, Assistant Superintendent Truscott's letter to the Washington Police Force of January 3, 1949, concerning *McDonald* v. *United States*, 335 U. S. 451.

[7] Recently lectures have included two pages of discussion of the opinions in *Harris* v. *United States*, 331 U. S. 145.

[8] Chief of Police John W. Polcyn notes, in a Foreword to the book, that officers were often not properly informed with respect to searches and seizures before thoroughgoing instruction was undertaken. One of their fears was that of "losing their cases in court, only because they neglected to do what they might have done with full legal sanction at the time of the arrest, or did what they had no legal right to do at such time."

statutory section excluding evidence "is limited in its application to the trial of misdemeanors. . . . It would appear . . . that . . . evidence illegally obtained may still be admissible in the trial of felonies." In Cleveland, recruits and other officers are told of the rules of search and seizure, but "instructed that it is admissible in the courts of Ohio. The Ohio Supreme Court has indicated very definitely and clearly that Ohio belongs to the 'admissionist' group of states when evidence obtained by an illegal search is presented to the court." A similar pattern emerges in Birmingham, Alabama.

The contrast between states with the federal rule and those without it is thus a positive demonstration of its efficacy. There are apparent exceptions to the contrast— Denver, for example, appears to provide as comprehensive a series of instructions as that in Chicago, although Colorado permits introduction of the evidence and Illinois does not. And, so far as we can determine from letters, a fairly uniform standard of officer instruction appears in other cities, irrespective of the local rule of evidence. But the examples cited above serve to ground an assumption that has motivated this Court since the *Weeks* case: that this is an area in which judicial action has positive effect upon the breach of law; and that, without judicial action, there are simply no effective sanctions presently available.

I cannot believe that we should decide due process questions by simply taking a poll of the rules in various jurisdictions, even if we follow the *Palko* "test." Today's decision will do inestimable harm to the cause of fair police methods in our cities and states. Even more important, perhaps, it must have tragic effect upon public respect for our judiciary. For the Court now allows what is indeed shabby business: lawlessness by officers of the law.

Since the evidence admitted was secured in violation of the Fourth Amendment, the judgment should be reversed.

MR. JUSTICE RUTLEDGE, dissenting.

"Wisdom too often never comes, and so one ought not to reject it merely because it comes late." Similarly, one should not reject a piecemeal wisdom, merely because it hobbles toward the truth with backward glances. Accordingly, although I think that all "the specific guarantees of the Bill of Rights should be carried over intact into the first section of the Fourteenth Amendment," *Adamson* v. *California,* 332 U. S. 46, dissenting opinion at 124, I welcome the fact that the Court, in its slower progress toward this goal, today finds the substance of the Fourth Amendment "to be implicit in the concept of ordered liberty, and thus, through the Fourteenth Amendment, . . . valid as against the states." *Palko* v. *Connecticut,* 302 U. S. 319, 325.

But I reject the Court's simultaneous conclusion that the mandate embodied in the Fourth Amendment, although binding on the states, does not carry with it the one sanction—exclusion of evidence taken in violation of the Amendment's terms—failure to observe which means that "the protection of the Fourth Amendment . . . might as well be stricken from the Constitution." *Weeks* v. *United States,* 232 U. S. 383, 393. For I agree with my brother MURPHY's demonstration that the Amendment without the sanction is a dead letter. Twenty-nine years ago this Court, speaking through Justice Holmes, refused to permit the Government to subpoena documentary evidence which it had stolen, copied and then returned, for the reason that such a procedure "reduces the Fourth Amendment to a form of words." *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, 392. But the version of the Fourth Amendment today held

applicable to the states hardly rises to the dignity of a form of words; at best it is a pale and frayed carbon copy of the original, bearing little resemblance to the Amendment the fulfillment of whose command I had heretofore thought to be "an indispensable need for a democratic society." *Harris* v. *United States,* 331 U. S. 145, dissenting opinion at 161.

I also reject any intimation that Congress could validly enact legislation permitting the introduction in federal courts of evidence seized in violation of the Fourth Amendment. I had thought that issue settled by this Court's invalidation on dual grounds, in *Boyd* v. *United States,* 116 U. S. 616, of a federal statute which in effect required the production of evidence thought probative by Government counsel—the Court there holding the statute to be "obnoxious to the prohibition of the Fourth Amendment of the Constitution, as well as of the Fifth." *Id.* at 632. See *Adams* v. *New York,* 192 U. S. 585, 597, 598. The view that the Fourth Amendment itself forbids the introduction of evidence illegally obtained in federal prosecutions is one of long standing and firmly established. See *Olmstead* v. *United States,* 277 U. S. 438, 462. It is too late in my judgment to question it now. We apply it today in *Lustig* v. *United States, post,* p. 74.

As Congress and this Court are, in my judgment, powerless to permit the admission in federal courts of evidence seized in defiance of the Fourth Amendment, so I think state legislators and judges—if subject to the Amendment, as I believe them to be—may not lend their offices to the admission in state courts of evidence thus seized. Compliance with the Bill of Rights betokens more than lip service.

The Court makes the illegality of this search and seizure its inarticulate premise of decision. I acquiesce in that premise and think the convictions should be reversed.

Mr. Justice Murphy joins in this opinion.