**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Rocio Sanchez; Olga Castro;
Myrna Martinez; Karen
Bjorland; Cheryl MacLyman;
Rhonda Kern,
            *Plaintiffs-Appellants,*

v.

County of San Diego; San Diego
County Board of Supervisors;
San Diego County Department of
Health and Human Services;            No. 04-55122
Steven Escoboza, Director of the        D.C. No.
San Diego County Health and          CV 00-1467 JTM
Human Services Agency, in his           SD Cal.
official capacity; San Diego
Office of District Attorney;             ORDER
Paul Pfingst, District Attorney of
the County of San Diego, in his
official capacity,
            *Defendants-Appellees,*

and

Aurora, on behalf of themselves
and all others similarly situated,
                        *Defendant.*

Filed April 16, 2007

Before: Andrew J. Kleinfeld, A. Wallace Tashima, and
Raymond C. Fisher, Circuit Judges.

Order;
Dissent by Judge Pregerson;
Dissent by Judge Kozinski

4283

## ORDER

Judge Kleinfeld voted to deny the petition for rehearing en banc, and Judge Tashima so recommended. Judge Fisher voted to grant the petition for rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge of the court called for a vote on whether to rehear the matter en banc. On such a vote, a majority of the active judges failed to vote in favor of en banc rehearing.

The petition for rehearing en banc is **DENIED.**

---

PREGERSON, Circuit Judge, dissenting, joined by REIN-HARDT, WARDLAW, W. FLETCHER, FISHER, PAEZ, and BERZON, Circuit Judges:

I dissent from the denial of the petition for rehearing en banc. I disagree with the majority's decision and strongly believe that this case requires en banc review. This case strikes an unprecedented blow at the core of Fourth Amendment protections. The majority opinion clings to *Wyman v. James*, 400 U.S. 309 (1971), asserting that it directly controls this case. This is unsupportable for three reasons. First, as clearly outlined in Judge Fisher's dissent, the program upheld in *Wyman* was significantly different in scope and goal from San Diego's program. Second, allowing *Wyman* to constrict the bounds of our Fourth Amendment jurisprudence ignores over thirty-five years of intervening law. Third, allowing this opinion to stand is an assault on our country's poor as we require them to give up their rights of privacy in exchange for essential public assistance.

## I. *Wyman v. James* Does Not Control This Case

"Project 100%" is a mandatory part of San Diego's public assistance program. The San Diego District Attorney's Public

Assistance Fraud Division created and operates the program. Applicants for cash assistance who are eligible and *not* suspected of fraud must consent to a warrantless home "walk through" or face denial of aid. Project 100% is part of the county's early fraud prevention and detection program. The visits are conducted by District Attorney investigators seeking to identify welfare fraud. These investigators are sworn peace officers with a duty to look for and report evidence of crimes. San Diego makes no claim that the visits are intended to serve any rehabilitative function.

The majority holds that *Wyman* "directly controls" this case. The majority states, "because we are bound by *Wyman*, we conclude that the Project 100% home visits do not qualify as searches within the meaning of the Fourth Amendment." *Id.* at 922-23. The majority also holds that even if the home visits are searches, they "are reasonable under the Supreme Court's decision in *Wyman*." *Id.* at 925. However, the facts here differ fundamentally from those in *Wyman*, and *Wyman* does not dictate the conclusion that home visits are not searches. Nor does *Wyman* require the court to find that these searches are reasonable. To the contrary, following the roadmap in *Wyman* leads to the conclusion that the home "walk throughs" in *Sanchez* are searches and are far too intrusive to be reasonable.

*Wyman* addressed legal questions only in the context of the factual circumstances presented. Judge Fisher's dissent highlights fundamental differences between the home visitation program at issue in *Wyman* (structured by New York statutes and regulations, and executed by social workers) and the one at issue in *Sanchez* (structured by the San Diego D.A.'s office and executed by fraud investigators). Of particular note: San Diego's Project 100% entails physical "walk through" inspections of applicants' homes designed specifically to search for evidence of crime or fraud, while the New York program explicitly prohibited such searching. Whether a particular home visitation program qualifies as a search under the

Fourth Amendment is a question of law applied to facts. Recognizing this, the *Wyman* Court emphasized that its analysis applied only to the facts presented; the Court left open the possibility that other home visits might be unconstitutional. *See Wyman*, 400 U.S. at 326.

The differences between San Diego's program and the program in *Wyman* are of a quality and character that cannot be ignored. *See Sanchez*, 464 F.3d at 933-36 (Fisher, J., dissenting). But by doing just that, the majority opinion extends *Wyman* to uphold an unreasonable search program. *Wyman* and *Sanchez* share a phrase: "home visits," but we cannot rest our legal analysis on the common use of these two words — a general phrase that reveals nothing about the purpose or nature of the "visit." We must look more closely at the facts, not just the language, of each case. And the simple fact of the matter is that a home visit in *Sanchez* is fundamentally different from a home visit in *Wyman*.

## II.  Fourth Amendment Jurisprudence

The Fourth Amendment requires that searches and seizures be reasonable. A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing. *Chandler v. Miller*, 520 U.S. 305, 308 (1997). Inexplicably, the majority opinion holds that highly intrusive, unannounced suspicionless home visits are not "searches" under the Fourth Amendment. *Sanchez*, 464 F.3d at 920. The Supreme Court has repeatedly held, however, that any conduct by a government agent that intrudes upon a person's reasonable expectation of privacy is a search or seizure under the Fourth Amendment. *See, e.g., Katz v. United States*, 389 U.S. 347, 359 (1967); *Smith v. Maryland*, 442 U.S. 735, 739-40 (1979); *Kyllo v. United States*, 533 U.S. 27, 33 (2001). No matter how minor the intrusion, the conduct must still be scrutinized under the Fourth Amendment. A minor intrusion will militate toward a judicial finding of reasonableness under the Fourth Amendment, but it does not exempt the conduct from all scru-

tiny or remove the conduct from the definition of a "search." *See Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979); *United States v. Martinez-Fuerte*, 428 U.S. 543, 555-56 (1976). Fourth Amendment searches occur when "the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo*, 533 U.S. at 33.

The majority relies on *Wyman* to hold that home visits related to welfare programs are never "searches." Under this rubric, we would not even need to determine whether the visits are reasonable or whether there is a special need for the enforcement as is required under a Fourth Amendment analysis (and thoroughly analyzed in Judge Fisher's dissent). Instead, the majority simply denies the plain fact that these highly intrusive home visits and walk-throughs looking for evidence of welfare fraud or other wrong doing are "searches." *Sanchez*, 464 F.3d at 920.[1]

The majority couches its opinion in terms of upholding precedents, but it hits at the core of established Fourth Amendment protections. The Supreme Court has described such rights as "basic to a free society." *Wolf v. Colorado*, 338 U.S. 25, 27 (1949), *overruled on other grounds by Mapp v. Ohio*, 367 U.S. 643 (1981). In fact, the Court has specifically pointed to the fundamental right we all have to privacy in our own homes. *Kyllo*, 533 U.S. at 33; *see also Payton v. New York*, 445 U.S. 573, 586 (1980). An individual's home lies at the zenith of privacy interests. *See, e.g.*, *United States v. Scott*, 450 F.3d 863, 871 (9th Cir, 2006) (as amended); *Payton*, 445 U.S. at 586 ("It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 477 (1971)).

---

[1]The majority also states that even if we were to consider the home visits to be searches, they are reasonable searches. *Sanchez*, 464 F.3d at 923. As the majority notes that it "need not reach the question" of the reasonableness of the search, that portion of the majority decision is merely dicta, unnecessary to reach the majority's holding. *Id.* at 923-28.

The majority makes much of the purportedly consensual nature of the Project 100% searches — asserting that they lower the plaintiffs' expectation of privacy and make the intrusive character of the "walk through" acceptable. *Sanchez*, 464 F.3d at 927. But there can be no true consent here. Applicants are not given notice of when the visit will occur; they are not informed of their right to withhold consent; they are told the visit is mandatory; and they are aware of the severe consequences of refusing the search.

### III.   This Case Is an Assault on the Poor

San Diego's program requires destitute, often disabled, persons and their families to forfeit all rights to privacy to qualify for welfare. The government's general interest in preventing fraud cannot justify such highly intrusive searches of homes where no grounds for suspicion exist. Welfare applicants are ordinary people who, due to lack of adequate funds, find themselves applying for life-sustaining government benefits.

As the panel majority notes, we stated in *Scott* that the "government may sometimes condition benefits on waiver of Fourth Amendment rights — for instance, when . . . paying welfare benefits." 450 F.3d at 867-68 (citing *Wyman*, 400 U.S. at 317-18). But the majority conveniently omits the end of the quoted sentence. Importantly, we went on to say that the government's power in this respect "is not unlimited." *Id.* at 868.[2] Here, San Diego has created a wholly unreasonable search program, far beyond that which could be legitimated by the waiver of individuals. *See id.* (explaining that consent to any search is only valid to the extent that the search is reasonable, "taking the fact of consent into account" as "merely a relevant factor").

---

[2]The precedent cited to support that assertion in *Scott* was *Wyman*. As Judge Fisher's dissent cogently notes at footnote 13, *Scott*'s reference to *Wyman* for this proposition is limited by *Wyman* itself, and the instant case goes far beyond the realm of what is permitted by *Wyman*.

*Sanchez* presents the enormously important issue of the legality of mandatory home searches of innocent persons based solely on their need for welfare assistance. California's fifty-seven other counties do not have programs in place that go as far as San Diego's Project 100%, but this ruling will surely set the new standard. It is fair to expect that counties throughout the Ninth Circuit may change their programs to take advantage of the legal latitude the ruling in *Sanchez* affords them. The intrusion here is the unannounced search of the home of a person under no suspicion whatsoever by fraud investigators, who are required not only to question the applicant but to pry into the applicant's most private spaces — to look through drawers, medicine cabinets, closets, garbage, and the like. Comparison to *Wyman* and the more recent line of special needs cases reveals the utterly unreasonable nature of this search program. The facts of *Sanchez* place the panel majority's ruling in new and untenable territory.

This case is nothing less than an attack on the poor. San Diego's program strips these individuals of their rights of privacy. These people who are already suffering from disabilities, loss of work, and other hardships must then suffer humiliation and further assaults on their dignity. This is especially atrocious in light of the fact that we do not require similar intrusions into the homes and lives of others who receive government entitlements. The government does not search through the closets and medicine cabinets of farmers receiving subsidies. They do not dig through the laundry baskets and garbage pails of real estate developers or radio broadcasters. The overwhelming majority of recipients of government benefits are not the poor, and yet this is the group we require to sacrifice their dignity and their right to privacy. This situation is shameful. This case should have been considered by the en banc court, and it should have been reversed.

KOZINSKI, Circuit Judge, dissenting from the order denying the petition for rehearing en banc:

I dissent for the reasons expressed in Judge Fisher's trenchant panel dissent.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.