Arnold G. Fraiman, J.
The defendant was indicted on 21 counts of contempt for refusing to answer questions put to him by a Grand Jury, after having been granted immunity from prosecution. He now moves to have the indictment dismissed *861 and for other sundry relief on the ground that the actions of the police which resulted in his appearance before the Grand Jury violated his constitutional rights. The facts are not in dispute: As a result of an unlawful search by the police of the defendant’s automobile and person, certain documents and items belonging to the defendant were unlawfully seized.[1] The defendant was thereafter subpoenaed to appear as a witness before the November, 1968, “B” Term Grand Jury in Bronx County which was investigating whether the State penal laws pertaining to illegal gambling activity and usury had been violated by persons affiliated with elements of organized criminal activity. It is conceded by the District Attorney that the defendant would not have been summoned before the Grand Jury but for the documents and items which had been unconstitutionally seized.
The defendant duly appeared, and at the outset of the proceedings the Grand Jury, pursuant to section 619-c of the Code of Criminal Procedure, granted him immunity from prosecution with respect to any incriminating testimony he might give. Nevertheless, with respect to the 21 different questions set forth in the indictment, the defendant deliberately and repeatedly refused to answer, asserting in each instance that he did so “on the grounds that [the answer] may tend to incriminate me.”
The defendant now moves to quash the indictment on the ground that he cannot be prosecuted for contempt for refusing to answer the questions posed by the Grand Jury because his very appearance before the Grand Jury resulted from, and would not have occurred but for, the unlawful search of his person and car. The People, on the other hand, contend that the so-called “ poisoned fruits ” doctrine is inapplicable, because the defendant was granted full and complete immunity from prosecution by the Grand Jury before he testified, and accordingly, his refusal to answer the .posed questions was contemptuous.
In the absence of any clear-cut authority on this difficult and important constitutional issue, a brief review of the landmark cases relating to the use of illegally obtained evidence might be in order.
In 1914, in Weeks v. United States (232 U. S. 383) the defendant had been convicted in a Federal District Court of using the mails in violation of Federal law. During the trial, evidence obtained by a Federal Marshal as a result of an illegal search of the defendant’s home was introduced and used against the *862 defendant. The Supreme Court, in unanimously reversing the conviction, stated that the practice by prosecutors of obtaining convictions by means of unlawful seizures and enforced confessions “.should find no sanction in the judgment of the courts ” (p. 392), and held that the use of evidence obtained as a result of an illegal search and seizure in any Federal prosecution was precluded by the Fourth Amendment.
In Wolf v. Colorado (338 U. S. 25 [1949]), decided 35 years later, the court, while holding that the constitutional rights guaranteed by the Fourth Amendment were enforceable against the States through the Fourteenth Amendment, expressly declined to make applicable to the States the “ exclusionary rule ” established by the Weeks case. In this connection, the court said: “ Granting that in practice' the exclusion of evidence may be an effective way of deterring unreasonable searches, it is not for this Court to condemn as falling below the minimal standards assured by the Due Process Clause a State's reliance upon other methods which, if consistently enforced, would be equally effective ” (p. 31).
Twelve years later, in Mapp v. Ohio (367 U. S. 643 [1961]), the court re-examined Wolf and flatly held that “ all evidence obtained by searches and seizures in violation of the Constitution is * * * inadmissible in a .state court ” (p. 655). The court stated (p. 656): “ In short, the admission of the new constitutional right by Wolf could not consistently tolerate denial of its most important constitutional privilege, namely, the exclusion of the evidence which an accused has been forced to give by reason of the unlawful seizure. To hold otherwise is to grant the right but in reality to withhold its privilege and enjoyment. Only last year the Court itself recognized that the purpose of the exclusionary rule ‘ is to deter — to compel respect for the constitutional guaranty in the only effectively available way— by removing the incentive to disregard it.' (Elkins v. United States, [364 U. S. 206], at 217.) ’ ’
Clearly, the principal issue in the Mapp case, as in the Wolf and Weeks cases before it, was the use of illegally obtained evidence in the prosecution of the person from whom the evidence was taken. Each case was a criminal case and in none did the court address itself to the question whether such evidence could be used in a civil proceeding or whether, as in the instant case, the evidence could be used in a criminal proceeding where the victim of the search had been granted immunity from prosecution. However, in One 1958 Plymouth Sedan v. Pennsylvania (380 U. S. 693 [1965]) the Supreme Court at least partially answered the former question. There the court con *863 sidered whether the exclusionary rule set forth in the Mapp case applied to a forfeiture proceeding, which was at least nominally ‘[1] civil ’ ’ in nature, in a State court. The court concluded that it did.
In that case, an automobile owned and operated by one McGonigle was observed by law enforcement officers of the Pennsylvania Liquor Control Board as being “ low in the rear, quite low ’ ’. The officers stopped the car and proceeded to search it. They found 31 cases of untaxed liquor which they promptly seized, together with the car. McGonigle was arrested ánd charged with a violation of Pennsylvania law. In addition, the Commonwealth filed a petition for forfeiture of the car. McGonigle sought dismissal of the petition on the ground that forfeiture of the automobile depended upon the admission of evidence unlawfully obtained. The trial court agreed and dismissed the petition. On appeal, the Supreme Court of Pennsylvania affirmed an intermediate appellate court’s reversal of the dismissal on the sole ground that the Weeks-Mapp exclusionary rule only applied to criminal prosecutions and not to forfeiture proceedings, which the court deemed civil in nature. However, the United States Supreme Court reversed the determination of Pennsylvania’s appellate courts and held that the exclusionary rule also applied to such proceedings. In so holding, the court relied heavily on Boyd v. United States (116 U. S. 616 [1886]) which also involved a forfeiture proceeding. It quoted from Boyd in part as follows: “‘We are also clearly of the opinion that proceedings instituted for the purpose of declaring the forfeiture of a man’s property by reason of offences committed by him, though they may be civil in form, are in their nature criminal * * * If the government prosecutor elects to waive an indictment, and to file a civil information against the claimants — that is, civil in form — can he by this device take from the proceeding its criminal aspect and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be * * * As, therefore, suits for penalties and forfeitures incurred by the commission of offences against the law, are of this quasi-criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the Fourth Amendment of the Constitution. * * (Plymouth, pp. 697-698, quoting from Boyd, pp. 633-634.)
The court concluded that ‘ ‘ the nature of a forfeiture proceeding * * * and the reasons which led the Court to hold that the exclusionary rule * * * is obligatory upon the States *864 under the Fourteenth Amendment * * # support the conclusion that the exclusionary rule is applicable to forfeiture proceedings such as the one involved here.” (380 U. S. 702. See, also, Matter of Finn’s Liq. Shop v. State Liq. Auth., 24 N Y 2d 647 [1969].)
In 1962, the Supreme Court had before it the identical constitutional question presented in the instant case. (Lanza v. New York, 370 U. S. 139 [1962].) However, the court decided the case on other grounds, and did not squarely come to grips with the issue. Nevertheless, the court’s opinion did give some indication, in dicta, of how it would have decided the question at tljat time, had it been necessary to do so. There, the defendant had been convicted in a State court of criminal contempt for refusing to answer a number of questions posed by a Joint Legislative Committee on Government Operations, after he had been granted immunity from prosecution. The subject of the Committee’s investigation was possible corruption in the State parole system. Some time prior to the defendant’s appearance before the Committee, officials of the Westchester County Jail had monitored and recorded a conversation between the defendant and his brother, Joseph “ Socks ” Lanza, who was then an inmate in that institution. The conversation, which was audited without the knowledge or consent of either party, took place in the visitors room of the jail. Six days later, Lanza was paroled by order of a Commissioner of the State Division of Parole. The circumstances surrounding his release prompted the legislative investigation.
On his appeal to the United States Supreme Court, the defendant argued that the monitoring of the conversation in the jail constituted an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments; that he would not have been called before the Committee but for the overheard conversation; and that the exclusionary rule rendered it impermissible for the Committee to use the unlawfully obtained transcript of his conversation in interrogating him.[2]
The court, with seven Justices participating in the decision, unanimously affirmed the conviction, on the ground that at least two of the questions which the defendant refused to answer were in no way related to the intercepted conversation, and on the further ground that it was probable that the defendant would have been called by the Committee even if the transcripts of his conversation with his brother had not existed. The court *865 thus did not pass upon the constitutional issue raised by the defendant, but it did discuss it in its opinion, which was delivered by Mr. Justice Stewart for, four of the Justices, the remaining three Justices concurring separately. After noting that it was “ at best a novel argument ” to say that a jail was a place where an individual could claim constitutional immunity from search and seizure, the court observed that, even assuming a jail were such a constitutionally protected place,
“ the petitioner’s argument would still carry far beyond any decision which this Court has yet rendered. The case before us bears no resemblance to such cases as Leyra v. Denno, 347 U. S. 556, where a State attempted to use as evidence in a criminal trial a confession which had been elicited by trickery from the defendant while he was in jail. See, also, Spano v. New York, 360 U. S. 315. We do not have here the introduction in a state criminal trial of evidence which is claimed to have been unconstitutionally seized, as in Mapp v. Ohio, 367 U. S. 643. See Rochin v. California, 342 U. S. 165. Nor is this a case where it is claimed that the evidence actually offered at a trial was procured through knowledge gained from what had been unlawfully obtained — -the ‘ fruit of the poisonous tree.’ Cf. Nardone v. United States, 308 U. S. 338.
‘ ‘ Here no such evidence was ever introduced in a prosecution against the petitioner. Rather, the petitioner was convicted for willfully refusing to answer the pertinent questions of a duly constituted legislative committee in the conduct of an authorized legislative investigation, after having been given immunity from prosecution. To hold that the petitioner could not constitutionally be convicted for refusing to answer such questions simply because they related to a conversation which had been unlawfully overheard by other state officials- would thus be a completely unprecedented step ” (p. 145).
E Thus, as of 1962, at least four Justices of the Supreme Court believed that the precise relief now sought by defendant in the instant case would represent a “ completely unprecedented step.”
That this would still be the position of the Supreme Court if the issue were presently before it is indicated by its opinion in a case decided just last year. (Terry v. Ohio, 392 U. S. 1 [1968].) In that case the court had occasion to review -the constitutionality of the so-called “ stop and frisk” procedure. After discussing the salutary purposes of the exclusionary rule, the court made the following observation: ‘ ‘ The exclusionary rule has its limitations * * * as a tool of judicial control. It cannot properly be invoked to exclude the products of legiti *866 mate police, investigative techniques on the ground that much conduct which is closely .similar involves unwarranted intrusions upon constitutional protections. Moreover, in some contexts the rule is ineffective as a deterrent * * * Regardless of how effective the rule may be where obtaining convictions is an important objective of the police, it is powerless to deter invasions of constitutionally guaranteed rights where the police either have no interest in prosecuting or are willing to forgo successful prosecution in the interest of serving some other goal.” (392 U. S. 13-14.)
From all of the foregoing, it is apparent that the exclusionary rule is. not applicable to every invasion by the police of constitutionally guaranteed rights, but only to those instances where the evidence thus obtained, or the fruit thereof, is sought to be used against the victim of such an invasion in a criminal or quasi-criminal proceeding. In the instant case, no attempt was made to prosecute the defendant for any crime arising out of or connected with the items unlawfully seized from him. On the contrary, the grant of immunity extended to him by the Grand Jury encompassed all such crimes. His indictment arose not from any evidence unlawfully seized from him, but from separate and new offenses committed after he was granted immunity from prosecution for offenses committed prior thereto.
Defendant’s reliance on Silverthorne Lbr. Co. v. United States (251 U. S. 385 [1920]) is misplaced. In that case, a Federal Grand Jury subpoenaed evidence which had theretofore been seized from the defendants in the course of an unlawful search, and subsequently returned to them.' The defendants refused to comply with the subpoena, and were thereafter convicted of contempt. The Supreme Court, per Mr. Justice Holmes, reversed, stating in part: ‘ ‘ The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all ” (p. 392).
Thus, Silverthorne involved an attempt by a Grand Jury to compel the production of evidence which had originally been unlawfully obtained for use against the victims of the unlawful seizure. Ho immunity from prosecution was extended in that case. When the court held that illegally obtained evidence could not only not be used in court, but that “ it shall not be used at all ”, it was obviously prohibiting its use indirectly, as well as directly, in the prosecution of the victim of the illegality. This is made clear from the context of the holding and from subsequent cases decided by the court. (See Lanza v. New York, supra, and Terry v. Ohio, supra.) See, also, People v. Harris *867 (25 N Y 2d 175 [1969]) where the New York Court of Appeals, just last July, reaffirmed its ruling in People v. Kulis (18 N Y 2d 318 [1966]) which held that statements obtained from a defendant in violation of the Fifth Amendment may be used by the prosecution to impeach the defendant’s credibility if he takes the stand on the trial, even though such statements would be inadmissible on the People’s case in chief.
Another recent decision by the Court of Appeals in a related context also supports the conclusion that the instant motion should be denied. In People v. Tomasello (21 N Y 2d 143 [1967]) the defendant had been indicted for perjury allegedly committed before a Grand Jury investigating corruption in connection with certain public works projects in Suffolk County. The trial court had dismissed the indictment on the ground that Tomasello was a prime target of the investigation and therefore, could not be prosecuted for perjury, and the Appellate Division affirmed. On appeal to the Court of Appeals that court unanimously reversed the lower court’s ruling.
The court restated the principle of law that when ‘ ‘ a prospective defendant or a target of an investigation is called and examined before a grand jury, ‘ his constitutionally-conferred privilege against self incrimination is deemed violated ’ * * # and as a consequence of such violation * * * ‘ the defendant is protected not only from indictment based on any incriminating testimony which he may have given, but also from use of such evidence ’ ” (21 N Y 2d 148-49, quoting from People v. Steuding, 6 N Y 2d 214, 217). However, the court then went on to say that, “ Since * * * the prospective defendant is automatically cloaked with an ‘ immunity ’ as broad as the constitutional privilege, fully protecting him from prosecution for substantive crimes on the strength of his testimony, such immunity * * * should ‘ not endow [him] with a license to commit perjury. ’ ” (p. 149), and that the defendant properly could be convicted of perjury.
The analogy to the present case seems clear. Here, the defendant argues that calling him before the Grand Jury violated his constitutional rights, and consequently that he cannot be convicted of contempt for refusing to answer the Grand Jury’s questions, even after being granted immunity. He is thus relying upon the precise rationale rejected by the Court of Appeals in the Tomasello case. Since he does not question the sufficiency or extent of the immunity conferred upon him, it follows that, as in the Tomasello case, the immunity, grant not only did not “ endow [him] with a license to commit perjury ”, *868 but it also mandated that he answer the questions put to him or be indicted for contempt for his refusal to do so.[3]
Finally, it should be noted that in refusing to answer the Grand Jury’s questions the defendant here did not rely on any violation of his Fourth Amendment rights. Instead, in each instance he expressly stated that he refused to answer ‘ ‘ on the grounds that it may tend to incriminate me. ’ ’ Since he does not now question or deny that complete immunity was granted him with respect to any testimony he might have given, it is apparent that his stated grounds for refusing to answer were completely unfounded. (People v. Tomasello, supra.)
For all of the foregoing reasons, the defendant’s motion to dismiss the indictment is denied. The court makes no determination with respect to the other relief sought by the defendant in his motion papers, which relates to another indictment in which the defendant is named.

. This is conceded by the District Attorney solely for the purpose of this motion.

. The defendant’s conviction was affirmed, as modified, by the Appellate Division (10 A D 2d 315 [1st Dept., 1960]), and the Court of Appeals (9 N Y 2d 895 [1961]), but neither court discussed the constitutional issue.

. The statute under which the defendant in the instant ease was conferred immunity (Code Crim. Pro., § 619-c) specifically provides that the grant of immunity does not extend to perjury or contempt committed after such grant.