## Commonwealth v. Fondoble

*David J. Brightbill,* Assistant District Attorney, for Commonwealth.

*Allen H. Krause,* for defendant.

GATES, P. J., August 16, 1972.—On August 21, 1970, defendant was involved in an accident which resulted in damages to the other vehicle. Being an uninsured motorist, defendant was notified that un-

less he fulfilled the requirements of section 1404 of the safety responsibility provision of The Vehicle Code of April 29, 1959, P. L. 58, as amended, 75 PS §1404, his driving privileges would be suspended. This required that he furnish a release of liability from the other party to the accident, proof that he had finally been adjudicated not to be liable, that he execute an acceptable bond or designated surety covering the stated amount as surety for the claimed amount, or that he furnish a copy of a duly acknowledged written agreement providing for installment payments for all claims arising out of the accident.

As a result of his failure to comply with the statute, defendant's driving privileges were suspended effective March 16, 1971, as well as the registrations of any cars owned by him. On February 24, 1972, defendant was apprehended while operating a motor vehicle in Lebanon County and was subsequently charged with operating during suspension. A hearing was held on June 21, 1972, at which defendant advised us that his defense was one of legal determination only, involving the issue of whether his privileges had legally been suspended. We directed counsel to file memoranda of law and counsel stipulated to all the foregoing facts.

In Bell v. Burson, 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (1971), Mr. Justice Brennan, delivering the opinion of the court, had occasion to review the Motor Vehicle Safety Responsibility Act of Georgia. The provisions of that act are closely akin to the safety responsibility provisions of Pennsylvania's Vehicle Code, Act of Assembly of April 29, 1959, P. L. 58, as amended, 75 PS §1404.

Petitioner Bell, an uninsured motorist, failed to post security as required for the injuries suffered by a young girl who rode her bicycle into the side of his

car. An administrative hearing was held prior to the suspension of Bell's driving privileges but that hearing excluded any consideration of the motorist's fault or liability for the accident. This was considered to be a deprivation of petitioner's constitutional right to procedural due process under the fourteenth amendment. The court held ". . . that under Georgia's present statutory scheme, *before* the State may deprive petitioner of his driver's license and vehicle registration it must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident . . .": Bell v. Burson, supra, 402 U.S. at page 542. (Italics supplied.)

In rejecting Georgia's argument that it need not provide a hearing on the issue of possible liability, the court said: ". . . While 'many controversies have raged about . . . the Due Process Clause,' . . . it is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective . . .": Bell v. Burson, supra, 402 U.S., page 542. ". . . Since the statutory scheme make liability an important factor in the State's determination to deprive an individual of his licenses, the State may not, consistently with due process, eliminate consideration of that factor in its prior hearing": Bell v. Burson, supra, 402 U.S., page 541. (Emphasis in original opinion.)

The variance between George's statutory scheme and that of Pennsylvania is negligible in respect to the applicability of the Bell holding to the facts of the case at bar. Due process standards apply with equal weight whether the grant of a driver's license

is listed as a "right" or a "privilege": Bell v. Burson, supra, 402 U.S., page 539. Both statutes provide for appeal machinery, initiated by the licensee, for de novo hearings, but only after the decision to suspend has been made.

"For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified . . .' ": Fuentes v. Shevin, et al., 407 U.S. 67, 80, 32 L. Ed. 2d 556, 569, 92 S. Ct. 1983 (1972). ". . . It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.' Armstrong v. Manzo et ux., 380 U.S. 545, 552": Fuentes v. Shevin, supra, 407, U.S. 80, 32 L. Ed. 2d 570.

Under the Pennsylvania statute, the licensee receives neither notice nor opportunity to be heard prior to suspension. Indeed, if he is to have a hearing at all, it must be on his own initiative after his license has been suspended. Though this appeal may result in a trial de novo and in a stay of the order of the secretary pending final determination of the matter (75 PS §1401(b)), this section does not cure the constitutional defect in that the petitioner has already been deprived of due process of law. "If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented . . .": Fuentes v. Shevin, supra, 407 U.S. 81, 32 L. Ed. 2d 570. At the hearing de novo, a petitioner's driving privileges may be reinstated if they were unjustly suspended, but clearly the constitutional injury has already been done. ". . . This Court has not, however, embraced the general proposition that a wrong may be done if it

can be undone . . .": Stanley v. Illinois, 405 U.S. 645, 647, 31 L. Ed. 2d 551, 556, 92 S. Ct. —— (1972).

As Mr. Justice Stewart pointed out in Fuentes v. Shevin, supra, 407 U.S. at page 82, 32 L. Ed. 2d, at page 571, "This is no new principle of constitutional law. The right to a prior hearing has long been recognized by this court under the Fourteenth and Fifth Amendments. Although the Court has held that due process tolerates variance in the *form* of a hearing 'appropriate to the nature of the case,' Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 313, and 'depending upon the importance of the interests involved and the nature of the subsequent proceeding [if any],' Boddie v. Connecticut, 401 U.S. 371, 378, the Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes affect. E.g., Bell v. Burson, 402 U.S. 535, 542, . . .'That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interests, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.' Boddie v. Connecticut, supra., at 378-379, (emphasis in original)."

The provisions of Pennsylvania Vehicle Code in this case do not comport with procedural due process. Fondoble had neither notice nor hearing prior to his suspension because these steps were not part of the statutory scheme. For this reason the statute fails to pass constitutional muster. It has long been settled that a statute repugnant to the Constitution is void: Marbury v. Madison, 1 Cranch 137; 2 L. Ed. 60 (1803). While we realize that a statute, unconstitu-

tional in form, may be enforced within the constitutional bounds, the procedure in question of the Pennsylvania Vehicle Code was void ab initio, because of its failure to fulfill the procedural due process requirements of the fourteenth amendment.

The case before us does not deal with court-made rules of criminal process, practice or procedure. We are confronted with a statute which is unconstitutional in form and in application. It is one thing to enforce a statute unconstitutional in form but blessed, albeit erroneously, with State court approval. It is quite another matter to enforce the same statute if its constitutionality was neither confirmed nor denied. Acts performed pursuant to a void statute are nullities and have no legal force or validity. Since the statute authorizing Fondoble's suspension was void, it follows that his suspension was likewise invalid. Having been properly licensed prior to the invalid suspension, he was properly licensed after it and at the time of the alleged offense. Since a legal suspension was a vital element of the crime with which he is charged, he may not lawfully be convicted.

The Commonwealth urges that we not apply Bell v. Burson retroactively and find Fondoble guilty because his suspension predated the Bell v. Burson decision. The argument is seated in those lines of developing case law on retroactivity in connection with constitutional rules of criminal procedure. See Linkletter v. Walker, 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965); Tehan v. U.S. 382 U.S. 406, 15 L. Ed. 2d 453, 86 S. Ct. 459 (1966); Johnson et al. v. New Jersey, 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772 (1966). But we are of the opinion that this constitutional concept is inapplicable to our controversy, as all of the cases espousing retroactivity as opposed to prospectivity dealt with rules of crimi-

nal procedure, and overruled prior court decisions directly on point.

For example, Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961), the court held that under the due process clause of the fourteenth amendment, the States were required to exclude from criminal prosecutions all evidence secured in violation of the fourth amendment mandate against illegal searches and seizures. That decision overruled Wolf v. Colorado, 338 U.S. 25, 69 S. Ct. 1359, 93 L. Ed. 1782 (1949), to the extent that it failed to apply the exclusionary rule to the States. Linkletter took the rule one step further by holding that Mapp was not to be given retrospective application because the rule was directed more toward a reduction in the incidence of police lawlessness than toward a purification of the fact-finding process.

In Gideon v. Wainright, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963), (right to counsel), and Douglas v. California, 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963), (right to appeal), the judicially formulated rules were given retrospective operation principally because they affected the integrity of the truth-determining process. The case at bar does not involve the concept of retrospectivity but rather turns upon the legality, under the fourteenth amendment, of the Pennsylvania statute and its mode of enforcement.

Since we are not dealing with court-made rules of process, practice or procedure and since the statute and the enforcement thereof were repugnant to the fourteenth amendment, we hold that Fondoble's suspension was an illegal act amounting to a nullity in relation to the charge of operating during suspension.

## ORDER

And now, to wit, August 16, 1972, defendant is adjudged not guilty.